[CONSTITUTIONAL LAW.

MASON *against* HAILE.

The States nave a right to regulate, or abolish, imprisonment fur
debt, as a part of the remedy for enforcing the performance of
contracts.

Where the condition of a bond for the jail limits, in Rhode Island,
required the party to remain a true prisoner in the custody of the
keeper of the prison, and within the limits of the prison, "until he
shall be *lawfully discharged,* without committing any manner of
escape or escapes during the time of restraint, then this obligation
to be void, or else to remain in full force and virtue;" *held,* that a
discharge, under the insolvent laws of the State, obtained from the
proper Court, in pursuance of a resolution of the legislature,
and discharging the party from all his debts, &c. " and from all
imprisonment, arrest, and restraint of his person therefor,"—was
a *lawful discharge,* and that his going at large under it was no
breach of the condition of the bond.

THIS was an action of debt, brought in the Circuit Court
of Rhode Island, upon two several bonds given by the de-
fendant, Haile, to the plaintiff, Mason, and one Bates, whom
the plaintiff survives, one of which bonds was executed on
the 14th, and the other on the 29th of March, 1814. The
condition in both bonds was the same, except as to dates
and sums, and is as follows :

" The condition of the above obligation is such, that if the
above bounden Nathan Haile, now a prisoner in the State's
jail, in Providence, within the county of Providence, at the
suit of Mason and Bates, do, and shall from henceforth con-
tinue to be a true prisoner, in the custody, guard, and safe-
keeping of Andrew Waterman, keeper of said prison, and in
the custody , guard, and safe keeping of his deputy, officers,
and servants, or some one of them, within the limits of said
prison, until he shall be *lawfully discharged,* without com-
mitting any manner of escape or escapes, during the time
of restraint, then this obligation to be void, or else to remain
in full force and virtue."

1827.

Mason
v.
Haile.

To the declaration upon these bonds, the defendant plead-ed several pleas. the su' 'ance of which was, that in June, 1814, after giving the bonds, the defendant presented a pe-tition to the legislature of Rhode Island, praying for relief, and the benefit of an act passed in June, 1756, entitled "an act for the relief of insolvent debtors," and that, in the mean time, all proceedings against him for debt might be stayed, and he be liberated from jail, on giving bonds to return to jail in case his petition shall not be granted. Upon this petition, the legislature, in February, 1815, passed the following re-solution : " On the petition of Nathan Haile, praying, for the reasons therein stated, that the benefit of an act, entitled, ' An act for the relief of insolvent debtors,' passed in the year 1756, be extended to him, voted, that said petition be con-tinued till the next session of this assembly ; and that, in the mean time, all proceedings against him, the said Haile, on account of his debts, be stayed ; and that the said Haile be liberated from his present confinement, in the jail, in the county of Providence, on his giving sufficient bond to the sheriff of said county, conditioned to return to jail in case said petition is not granted." That, on the 28th of Februa-ry, 1815, he gave sufficient bond, with surety, to the sheriff, conditioned to return to jail, in case the petition should not be granted, and, thereupon, the sheriff did liberate and dis-charge him from his said confinement, in said jail, and permit him to go at large, out of said Waterman's custody, and the custody of the keeper of said prison, his deputy, officers, and servants, and out of the limits of said jail and jail-yard ; and he, said Haile, did, upon being so liberated, depart and go at large out of the same accordingly, and so continued at large and liberated, until the prayer of said petition was granted by the legislature, at the February session, 1816, and ever since, as lawfully he might. That, in February, 1816, the legislature, upon a due hearing, granted the prayer of the defendant's petition, and passed the following resolu-tion : " On the petition of Nathan Haile, of Foster, praying, for the reasons therein stated, that the benefit of an act pass-ed in June, 1756, for the relief of insolvent debtors, may be extended to him ; voted, that the prayer of the petition be

and the same is hereby granted." That the defendant afterwards, in pursuance of the above resolution, and of the laws of the State, received in due form, from the proper Court, a judgment, " that he should be, and thereby was, fully discharged of and from all debts, duties, contracts, and demands, of every name, nature, and kind, outstanding against him. debts due to the State aforesaid, and to the United States, excepted, and from all imprisonment, arrest, and restraint of his person therefor."

To the pleas so pleaded the plaintiff demurred ; there was a joinder in demurrer ; and, on the argument of the cause, the opinions of the judges of the Court below were opposed, upon the question whether the defendant was entitled to judgment, on the ground that the matters set forth on his part in his pleas, were sufficient to bar the action, or whether the plaintiff was entitled to judgment upon the demurrers and joinders. The question was thereupon certified to this Court for final decision.

*Feb. 9th.* The cause was argued by Mr. *Webster* and Mr. *Bliss*, for the plaintiff, and by Mr. *Whipple* and Mr. *Wheaton*, for the defendant.

On the part of the plaintiff, it was argued, that the acts of the legislature of Rhode Island of February, 1815, and of February, 1816, liberating the person of the defendant from imprisonment, and reviving in his favour an obsolete insolvent act of the colonial legislature, passed in the year 1756, were (in the strictest sense) laws impairing the obligation of contracts. They interfered with an actually vested right of the creditor, acquired under existing laws, and entitling him to a particular remedy against the person of his debtor. Upon the narrowest construction which had ever been given to the prohibition in the constitution of the United States, they impaired the obligation of the bonds now in question ; which, though a part of the judicial proceedings to enforce the execution of the primary contract, were still " contracts," within the letter and spirit of the constitution. The obligation of these contracts was entirely destroyed by these legislative acts, which were not general laws, but private acts, professedly intended for the relief of the party in the particular case. They might even be con-

sidered void on general principles, independent of the positive prohibition in the constitution, as being retrospective laws interfering with vested rights. The law of 1756 was no longer in force in Rhode Island, and the reference to it in the acts of 1815, and 1816, could only have the effect of reviving it in the particular case, and was tantamount to the enactment of a new law with similar provisions. But the acts now in question were clearly retrospective acts of legislation, impairing the obligation of contracts in existence when the acts were passed; and, consequently, the case fell within the principles determined by the majority of the Court in *Ogden* v. *Saunders*.[a]

For the defendant, it was insisted, that although the act of 1756 was not in force (as a general and permanent law) when the bonds were given, yet the statutes of 1798, and 1812, provide for relief in cases of insolvency; which is always granted by referring to the act of 1756, and reviving its provisions in favour of the individual. These statutes, together with the established usage under them, making part of the unwritten law of the State, form a system or code of insolvent laws, authorizing the debtor to petition in the manner prescribed by the act of 1756, constituting the legislature a Court to hear and determine it as a case between debtor and creditor,[b] and requiring an assignment of the debtor's property for the benefit of all his creditors. The local legislature possesses sovereign power over the remedy, in its own Courts, for the enforcement of contracts made within its own territory;[c] and the acts under which the prison bonds were given, as well as those under which the discharge was obtained, are a part of the process laws of the State, which it has a right to make, alter, and repeal, at its pleasure. The bonds in question could hardly be considered as *contracts* within the meaning of the constitutional prohibition, since there is but one *voluntary* party to them. They are rather a part of the judicial process for enforcing the performance of contracts, and the collection of debts.

*a Ante*, p. 213.

*b* Olney v. Andrews, 3 *Dall.* 308. Calder v. Bull, 3 *Dall.* 386.

*c* Sturges v. Crowninshield, 4 *Wheat. Rep.* 200, 201.

1827.

Mason
v.
Haile.

The legislative resolution of February, 1815, is not void on account of its dependence on the act of insolvency of 1816, because the latter, though it professes to discharge both person and property, (and, therefore, may be void in part,) is not entirely void, it being a present discharge executed, and, therefore, void only for the excess. But, admitting the act of 1816 to be entirely void, that of 1815 has no necessary connexion with, or dependence upon it. If the resolution of 1815 would have been a valid discharge from imprisonment in close jail, it must be a valid discharge from the limits, as it does not impair the contract for the liberty of the yard. It does not impair it, because that contract is part of a general system, or code of laws, regulating the remedy in regard to imprisonment for debt; and taken in connexion with that system, it is plain, that the legislature, when they provided the bond as a security for the creditor, did not mean to deprive themselves of the power of entirely liberating the debtor. The words " lawfu! discharge" are general, and necessarily include all discharges which were lawful previous to the execution of the bond. And even if the resolution of 1816 is to be considered not as the sentence of a Court of justice, but as a special law, future in its operation, it does not impair the obligation of the contract, because the bond, by necessary construction, must be taken to refer to future laws, and is to be governed by the laws of the State, general or special, in force at the time of the discharge. Whatever these laws provide shall be a " lawful discharge," is a " lawful discharge," within the meaning of the laws under which the bonds were taken, since all these laws are made by the same legislative authority, having sovereign control over the subject matter.

Mr. Justice THOMPSON delivered the opinion of the Court.

The question in this case arises upon the following certificate of a division of opinion of the judges of the Circuit Court of the United States for the District of Rhode Island. " This cause came on to be heard, and was argued by counsel on both sides, and thereupon the following question occurred: viz. whether, upon the amended pleas in this case, severa ly pleaded to the first and second counts of the

plaintiff's declaration, and to which there are demurrers, and joinders in demurrer, the defendant is entitled to judgment, on the ground that the matters set forth therein, on the part of the defendant, are sufficient to bar the action; or whether the plaintiff is entitled, upon said demurrers and joinders, to judgment? Upon which question the Court was divided in opinion."

It is not understood by this Court, that any question, as to the sufficiency of the pleas, in point of form, is drawn under examination, but simply, whether, upon the merits, the matter thereby set up is sufficient to bar the action. The action is founded upon two several bonds, given by the defendant to the plaintiff, and one Bates, whom the plaintiff survives, one dated the 14th, and the other the 29th of March, 1814. The condition in both bonds is the same, except as to dates and sums, and is as follows : " The condition of the above obligation is such, that if the above bounden Nathan Haile, now a prisoner in the State's jail, in Providence, within the county of Providence, at the suit of said Mason and Bates, do, and shall from henceforth continue to be a true prisoner, in the custody, guard, and safe-keeping of Andrew Waterman, keeper of said prison, and in the custody, guard, and safe keeping of his deputy, officers, and servants, or some one of them, within the limits of said prison, until he shall be *lawfully discharged*, without committing any manner of escape or escapes during the time of restraint, then this obligation to be void, or else to remain in full force and virtue."

The defence set up by the pleas, to show there has been no breach of the condition of the bond, is substantially, that in June, 1814, after giving the bond in question, the defendant presented a petition to the legislature of Rhode Island, praying relief, and the benefit of the insolvent act of 1756; and that, in the mean time, all proceedings against his person and estate, for the collection of debts, might be stayed, and he be liberated from jail, on giving bonds to return in case his petition should not be granted. Upon this petition, the legislature, in February, 1816, passed the following resolution : " On the petition of Nathan Haile, praying, for the reasons therein stated, that the benefit of an act, entitled, an act for the relief of insolvent debtors, passed in the year

1827.

Mason
v
Haile.

1756, be extended to him, *voted*, that said petition be continued until the next session of this assembly ; and that, in the mean time, all proceedings against the said Haile, on account of his debts, be stayed ; and that the said Haile be liberated from his present imprisonment, in the jail, in the county of Providence, on his giving sufficient bond to the sheriff of the county, conditioned to return to jail in case said petition is not granted." The defendant, after the passing of this resolution, gave the bond required by it, and, on the 28th of the same month, was discharged from imprisonment, and has ever since been at large, out of the custody of the sheriff. In February, 1816, the legislature, upon a due hearing, granted the prayer of the defendant, and passed the following resolution : " On the petition of Nathan Haile, of Foster, praying, for the reasons therein stated, that the benefit of an act, passed in June, 1756, for the relief of insolvent debtors, may be extended to him, voted, that the prayer of the said petition be, and the same is hereby granted." By the granting of the prayer of the petition, the condition of the second bond given to the sheriff was complied with, and the bond became extinguished.

The defendant afterwards proceeded to take the benefit of the insolvent act revived in his favour, according to the statute provisions, and received in due form from the proper Court, a judgment, "that he should be, and thereby was fully discharged of and from all debts, contracts and demands, of every name, nature, and kind, outstanding against him, debts due to the State aforesaid, or to the United States, excepted, and from all imprisonment, arrest, and restraint of his person therefor." The insolvent act of 1756 is not considered in force as a general and permanent law, but the legislature of Rhode Island has been in the constant habit of entertaining petitions, like the present, and has by the general law of 1798, (now in force,) prescribed the mode by which such petitions are to be regulated, and in case of granting the prayer of the petition, the course is to pass an act or resolution, giving the benefit of the act of 1756 to the petitioner, and thus, in effect, reviving it for his particular benefit. So, that the mode pursued to obtain the discharge of the defendant, as set out in the pleas, was according to the established course

of proceeding in cases of insolvency, and in conformity to the laws of Rhode Island, by which the defendant was discharged from all his contracts, and from *imprisonment.*

The effect of this discharge upon tne original judgment against Haile is not now drawn in question. The only inquiry is, whether he has violated the condition of his bonds of March, 1814, by going at large, under the authority and sanction of the resolutions of the legislature, as before stated. His bond required him to remain a true prisoner, until he should be *lawfully discharged,* without committing any manner of escape during the time of restraint. The bond is not that he shall remain a true prisoner until the debt shall be paid. Nor is there any thing upon the face of the bond, or if we look out of it, to the known and established laws and usages in that State, calling for such a construction. A lawful discharge, in its general signification, will extend to, and be satisfied by, any discharge obtained under the legislative authority of the State. And it is not unreasonable to consider such prison bonds as given subject to the ordinary and well known practice in Rhode Island, for the legislature to entertain petitions in the manner pursued by the defendant, to obtain the benefit of the insolvent act of 1756, in the manner in which these petitions are received and proceeded upon, as prescribed by the act of 1798. And, indeed, this cannot strictly be considered a private contract between the parties, but rather as a statute engagement, imposed by an act of the legislature, and as a part of the process under which the defendant was held as a prisoner. And with the full knowledge of this regulation and practice, it is hardly to be presumed, that such discharges were not understood to be lawful discharges. And the same remarks will apply to the term escape in the bond, which can mean no more than a departure from the limits without lawful authority. Suppose the legislature, after the execution of this bond, had enlarged the jail limits? It surely would not have been an escape for the defendant to have availed himself of the enlarged limits, and gone beyond his former bounds. And yet, if the limits prescribed at the time the bond was executed, are to govern the effect and operation of the bond, it would be an escape. Such bonds may well be considered

The State le-
gislatures have
sovereign pow-
er over the
subject of im-
prisonment for
debt, on pro-
cess from their
own Courts.

as an enlargement of the prison limits, and a mere modifica-
tion of the imprisonment, according to the provisions of the
laws of Rhode Island.

Can it be doubted but the legislatures of the States, so far
as relates to their own process, have a right to abolish im-
prisonment for debt altogether, and that such law might ex-
tend to present, as well as future imprisonment? We are
not aware that such a power in the States has ever been
questioned. And if such a general law would be valid un-
der the constitution of the United States, where is the pro-
hibition to be found, that denies to the State of Rhode
Island the right of applying the same remedy to individual
cases? This is a measure which must be regulated by the
views of policy and expediency entertained by the State
legislatures. Such laws act merely upon the ren-dy, and
that in part only. They do not take away the entire re-
medy, but only so far as imprisonment forms a part of such
remedy. The doctrine of this Court in the case of *Sturges*
v. *Crowninshield*, (4 *Wheat. Rep.* 200.) applies with full
force to the present case. " Imprisonment of the debtor,"
say the Court, " may be a punishment for not performing
his contract, or may be allowed as a mean for inducing him
to perform it. But a State may refuse to inflict this punish-
ment, or may withhold it altogether, and leave the contract
in full force. Imprisonment is no part of the contract, and
simply to release the prisoner, does not impair its obliga-
tion."

The discharge,
in this case,
was a *lawful*
discharge,
within the con-
dition of the
bond for the
jail liberties.

In whatever light, therefore, the question is viewed, no
breach of the condition of the bond, according to its true
sense and interpretation, has been committed. The libera-
tion of the defendant from confinement, on his giving bond
to the sheriff to return to jail in case his petition for a dis-
charge should not be granted, was sanctioned by the due
exercise of legislative power, and was analogous to extend-
ing to him more enlarged jail limits, and would not be con-
sidered an escape. And both this and the final discharge,
so far, at all events, as it related to the imprisonment of the
defendant, affected the remedy in part only, and was in the
due and ordinary exercise of the powers vested in the legis-
lature of Rhode Island, and was a lawful discharge, and no

escape, and of course, no breach of the condition of the bond in question.

It must, accordingly, be certified to the Circuit Court, that the matters set forth in the defendant's amended pleas, are sufficient to bar the plaintiff's action.

Mr. Justice WASHINGTON dissented. It has never been my habit to deliver dissenting opinions in cases where it has been my misfortune to differ from those which have been pronounced by a majority of this Court. Nor should I do so upon the present occasion, did I not believe, that the opinion just delivered is at variance with the fundamental principles upon which the cases of *Sturges* v. *Crowninshield*, and *Ogden* v. *Saunders*, have been decided. A regard for my own consistency, and that, too, upon a great constitutional question, compels me to record the reasons upon which my dissent is founded.

The great, the intelligible principle, upon which those cases were decided, is, that a *retrospective State law*, so far as it operates to discharge, or to vary the terms of an existing contract, impairs its obligation, and is, for that reason, a violation of the tenth section of the first article of the constitution of the United States; but that a law, which is *prospective in its operation*, has not this effect, and, consequently, is not forbidden by that instrument. But, if I rightly understand the opinion pronounced in this case, and the facts upon which it is founded, this principle is subverted, and the distinction between retrospective and prospective laws, in their application to contracts, is altogether disregarded. The facts are, that the bond upon which this action is brought, bears date the 14th of March, 1814, and the condition is, that the defendant, then a prisoner in the State's jail in Providence, at the suit of the plaintiff, shall continue to be a true prisoner, in the custody and safe keeping of the keeper of the said jail, within the limits of the said prison, until he shall be lawfully discharged. Upon the petition of the defendant to the legislature of Rhode Island, to extend to him the benefit of a certain act passed in the year 1756, an act was passed in February, 1815, which liberated him from his confinement in the jail aforesaid, on his giving a bond to return

1827.

Mason
v.
Haile.

to the said jail in case his petition should not be granted, and, by a subsequent act passed in the following year, he was discharged from his debts, upon a surrender previously made of all his estate, for the benefit of his creditors. The plea admits, that the defendant did depart from the limits of the jail, and justifies the alleged escape under the above acts of the legislature. The opinion considers those acts as constitutional, and decides that the defendant was lawfully discharged within the terms of his bond.

The case of *Sturges* v. *Crowninshield* arose upon a contract for *the payment of money*, from which the debtor was discharged under a subsequent State insolvent law, and this discharge was plead in bar of the action upon the contract. This Court decided the plea to be insufficient, upon the ground, that the law upon which it was founded impaired the obligation of the contract, which was entered into previous to his discharge. The obligation of the contract upon which the present suit was brought, is not to pay money, but to *continue a true prisoner within the limits of the jail* in which he was then confined. A subsequent act of the legislature discharges him from his confinement, and authorizes him to go at large, of which law he availed himself, and under which he justifies the alleged breach of the condition of his bond.

A contract, we are informed by the above case, is an agreement by one or more persons to do, or not to do, a particular thing; and the law which compels a performance of such contract, constitutes its obligation. The thing to be done in that case was, to pay money; and in this, it is, to continue a true prisoner; and, at the time it was concluded, the existing law of Rhode Island required him to perform this engagement. A discharge from his debts in the former case, by a subsequent law of the State, impaired that obligation; but this obligation, it is said, is not impaired by a subsequent law which discharges him from confinement, as well as from all his debts. If the principle which governs the two cases can be reconciled with each other, the course of reasoning by which it is to be effected is quite too subtle for my mind to comprehend it.

It was stated, in the case alluded to, that imprisonment of

the debtor forms no part of the contract, and, consequently, that a law which discharges his person from confinement does not impair its obligation. This I admit, and the principle was strictly applicable to a contract for *the payment of money.* But can it possibly apply to a case where *the restraint of the person* is the sole object of the contract, and *continuing within the limits of the prison* the thing contracted to be done?

I admit the right of a State to put an end to imprisonment for debt altogether, and even to discharge insolvent debtors from their debts, by the enactment of a bankrupt law for that purpose. I am compelled, by the case of *Sturges* v. *Crowninshield,* to make this latter admission, and I voluntarily make the former. But what, I insist upon is, that if the law in either case is made to operate retroactively upon contracts, to do what the law discharges the party from doing, it impairs the obligation of the contract, and is so far invalid.

I will now briefly consider the reasons which are assigned for distinguishing this case from that of *Sturges* v. *Crowninshield.*

It is said, that the bond in this case is not, in point of law, a contract, since there is but one *voluntary* party to it, and a contract cannot exist unless there be at least two parties to it. My answer is, that the law of Rhode Island which authorized the giving of the bond, made the creditor the other party, as much so as creditors and legatees are made parties to a bond, which the law requires an executor to give. If this answer be not considered as satisfactory, I will add another, which is, that the creditor has adopted it as his contract by putting it in suit.

Again, it is said, that the acts which discharged this defendant from his imprisonment, and even from the debt altogether, are not retrospective in their operation, and are not so considered in the State where they were passed.

How they are considered in that State, is more than this Court can judicially know, and, consequently, that circumstance cannot here form the basis of a judicial determination.

All that we do judicially know is, that the act of 1756

was a temporary law, and expired nearly half a century ago. It was, then, in the year 1815, as if it had never existed. An act in this year to revive it, either as a general law, or for the purpose of benefitting a particular individual, is the enactment of a *new law*, which derives all its force from the will of the legislature which enacts it, and not from that of the legislature to which the expired law owed its temporary existence. Is it possible that argument, or authorities, can be required to prove this proposition? Would the argument upon which the contrary proposition is founded have been adopted in the case of *Sturges v. Crowninshield*, if the discharge had been under an act passed subsequent to the contract, which revived an old expired insolvent or bankrupt law? And am I to understand, that contracts *for the payment of money*, as well as for the restraint of the person of the debtor, may now be discharged in the State of Rhode Island at any time, by an act to revive the act of 1756 in favour of debtors for whose benefit it may be revived? If this be the effect of the present decision, (and I confess I cannot perceive how it can be otherwise,) the decision in the case of *Sturges v. Crowninshield* will avail nothing in that State, or in any other of the States in whose code an old deceased insolvent law can be found, which, in the days of its existence, authorized a legislative discharge of a debtor from his debts, or from his prison bounds bond.

Lastly, it is said, that this law does no more than enlarge the limits of the prison rules, within which the defendant bound himself to continue. And can it be contended, that a law which has this effect does not vary (and if it does so, it impairs,) the terms of the contract entered into by the defendant? For what object was he restricted to certain limits, if not to coerce him to pay the debt for which the plaintiff had a judgment and execution against him? And is not this object defeated, and the whole value of his prison bounds contract destroyed, by enlarging the limits to those of the State, of the United States, or of the four quarters of the globe? I shall add nothing further. I have prepared no written opinion; my object in declaring my dissent from that which has been delivered, being not so much to prove

that opinion to be wrong, as to vindicate my own consistency.

Certificate, that the matters set forth in the defendant's pleas are sufficient to bar the plaintiff's action.