Hoeace Maynard, Special J.,
delivered the ©pinion of the Court.
At the February Term, 1861, of th® Circuit Court of Greene County, the plaintiffs in error confessed judgment upon three promissory notes, executed by them on the 13th of October, 1858, for the sum of $2,395, and costs. Subsequently, and during the same Term, they appeared in open Court, and offered to stay the judgment, under the Act of the General Assembly of Tennessee, passed on the 26th day of January, 1861; and thereupon, came certain persons, and offered themselves as stayors of the judgment. It was admitted that the security offered, was ample and sufficient; but the Court, being of opinion that the Act, as to debts contracted prior to its passage, was unconstitutional, and simply void, refused to allow the stay. The parties then prayed an appeal to this Court.
The Constitution of the United States, inhibits the States from passing any “law impairing the obligation of contracts.” The same restriction is contained in the Constitution of Tennessee. The Act of the 26th of January, 1861, is supposed to contravene this provision.
*110 We approach the examination of the question, with a strong appreciation of its difficulty. Perhaps, there ■ is not a single clause of the Constitution, which has given rise to more acute and vehement controversy, and the nature and extent of whose prohibitory force has called forth more ingenuous speculation, and more animated judicial discussion. The best intellects of the country have given their powers to its examination; and if their rea-sonings do not always leave the mind entirely satisfied and at rest, it must be attributed to the nature of the subject.
A contract has been defined to be, “an agreement to do, or not to do, a particular thing.” Without more, this would be simply a promise, and not binding. It has also been defined to be, “an agreement, upon sufficient consideration, to do, or not to do, a particular thing,” To be obligatory, it must be made freely, not under duress, or any kind of restraint; understandingly, and not preceded by fraud or deceit. A contract, then, is an agreement, made understandingly, by parties free to act, upon sufficient consideration; to do, or not to do, a particular thing.
The right to make contracts is one of the original rights of mankind, coeval with the right to acquire and hold property, and antecedent to all legislation. It furnishes the highest constraint that men can impose upon themselves, and one which they use the strongest terms to express, employing language, which, in its literal signification, implies strict bodily confinement. It is this quality which constitutes the obligation, or binding effect, of the contract. The act of the party, self-imposed, it is at once an absolute duty, and a perfect right: — duty to *111 perform, right to exact performance, to the extent of the undertaking. On entering into a state of society, men surrender to the community the power, by appropriate legislation, to enforce their contracts, ' to regulate the forms of contracting, to prescribe the rules by which contracts shall be evidenced, and to prohibit such as may be mischievous. It has been maintained, with much plausibility, that the law enters into and forms a part of the contract; but it has been judicially held, by a majority of the Supreme Court of the United States, that such a doctrine is untenable. Although the law of the place acts upon a contract, and governs its construction, validity and obligation, it constitutes no part of it. The obligation of the contract is derived from the agreement of the parties, and not from the law:- Story’s Commentaries on the Constitution, Book 3, chap. 34, secs. 1377, 1378-
The obligation of the contract thus being limited and fixed by its stipulations, the State may not enact any law which enlarges, abridges, or in any way whatever, changes the intention of the parties. The measure, or degree, in which the change is effected, can, in no respect, influence the conclusion; for, whether the law affect the validity, the construction, the duration, the discharge, or the evidence, of the contract, it impairs its obligation, though it may not do so to the same extent, in all the supposed cases. Any deviation from its terms, by postponing, or accelerating the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are a part of the contract, however minute, or apparently immaterial in their effect upon it, impair its obligation. Still more, a law which makes the contract wholly, in *112 valid, or extinguishes, or releases it, is a law impairing it. For example: if A contracts, by a certain day, to convey to B such a tract of land, no State legislation can postpone the time of performance, or provide for a conveyance of less than the whole tract, or of other lands of less, or of even greater value, much less dispense with the conveyance altogether.
We may remark, that, sacred as is the obligation of a contract, the law rarely has power to compel the observance of it. That must depend upon the ability and good faith of the party. A failure to observe it, is a breach of the contract. At this point the law interposes, and the means used to enforce it constitute the remedy which society affords the injured party; and any law regulating the proceedings of Courts on this subject, would be a law regulating the remedy. The State is in the exercise of its legitimate and acknowledged powers, when it is regulating the remedy and mode of proceeding in its Courts.
The power of State legislation to control the remedy for breach of contract, underwent much discussion in the case of Ogden vs. Saunders, 12 Wheaton, 214. The matter in judgment was the validity of the New York Statute of insolvency. The majority of the Court decided in favor of the validity when operating upon future contracts, and between its citizens. Chief Justice Marshall, with Justices Story and Duvall, dissented. The opinion of these three Judges, delivered by the first, though not authoritative in that particular case, is deservedly held in high authority, as a commentary upon this clause of the Constitution.
In the course of the discussion, the Chief Justice *113 takes occasion to note the distinction between the obligation of a contract, and the remedy to enforce it, when broken. He says: “They originate at different times. The obligation to perform, is coeval with the undertaking to perform: it originates with the contract itself, and operates anterior to the time of performance. The remedy acts upon a broken contract, and enforces a preexisting obligation.”
“But, although the identity of obligation and remedy be disproved, it may be urged, that they are precisely commensurate with each other, and are such sympathetic essences, (if the expression may be allowed,) that the action of law upon the remedy is immediately felt by the obligation; that they live, languish, and die together. The use made of this argument, is, to show the absurdity and self-contradiction of the construction, which maintains the inviolability of obligation, while it leaves the remedy to the State governments.”
“We do not perceive this absurdity, ’ or self-contradiction. One country exhibits the extraordinary spectacle of distinct, and, in many respects, independent governments, over the same territory, and the same people. The local governments are restrained from impairing the obligation of contracts, but they furnish the remedy to enforce them, and administer that remedy in tribunals constituted by themselves. It has been shown that the obligation is distinct from the remedy, and, it would seem to follow, that law might act on the remedy, without acting on the obligation. To afford a remedy, is certainly the high duty of those who govern to those who are governed. A failure in the performance of this duty, subjects the government to the just reproach of the world, *114 But the Constitution has not undertaken to enforce its performance. That instrument treats the States with the respect which is due to intelligent beings, understanding their duties, and willing to perform them; not as insane beings, who must be compelled to act for self-preservation. Its language is the language of restraint, not of coercion. It prohibits the States from passing any law impairing the obligation of contracts: it does not enjoin them to enforce contracts. Should a State be sufficiently insane to shut up or abolish its Courts, and thereby withhold all remedy, would, this annihilation of remedy annihilate the obligation also, of contracts? We know it would not. If the debtor should come within the jurisdiction of any Court of another State, the remedy would be immediately applied, and the inherent obligation of the contract enforced.”
The great jurist then examines what had been urged “as a conclusive argument against the existence of a distinct line, dividing obligation from remedy.” It is this: the law affords remedy, by giving execution against the person, or the property, or both. [This opinion was delivered in 1827.], The same power which can withdraw the remedy against the person, can withdraw that against the property, or that against both, and thus effectually defeat the objection. The Constitution, we are told, deals not with form, but with substance; and cannot be presumed, if it designed to protect the obligation of contracts from State legislation, to have left it thus obviously exposed to destruction.
The answer is, that if the law goes further, it annuls the obligation without affording the remedy which satisfies it. If its action on the remedy be such as palpably *115 to impair the obligation of a contract, the very case arises which we suppose to be within the constitution. If it leaves the obligation untouched, but withholds the remedy, or affords one which is merely nominal, it is like all other cases of misgovernment, and leaves the debtor still liable to his creditor, should he be found, or should his property be found, where the laws- afford .a remedy.
We perceive, then, no reason for the opinion, that the prohibition to pass any law impairing the obligation of contracts, is incompatible with the fair exercise of that discretion which the State Legislatures possess, in common with all governments, to regulate the remedies afforded by their own Courts. We think that obligation and remedy are distinguishable from each other; that the first is created by act of the parties, the last is afforded by Government. The words of the restriction we have been considering, countenance, we think, this idea: No State shall “pass any law impairing the obligation of contracts.” These words seem to us to import, that the obligation is intrinsic, that it is created by the contract itself, not that it is made dependent on the laws made to enforce it: 12 Wheaton, 350-354; 7 Curtis, 211-214.
In the same case, Justice Thompson, who was one of the majority that decided it, while delivering his opinion, uses this language: “The mode and manner, and the extent to which property may be taken in satisfaction of debts, must be left to the sound discretion of the Legislature, and regulated by its views of policy and expediency, in promoting the general welfare of the community, subject to such regulation. It was the policy of the common law, under the feudal system, to exempt *116 lands altogether from being seized and applied in satisfaction of debts; not even possession could be taken from the tenant. There can be no natural right growing out of the relation of debtor and creditor, that will give the latter an unlimited claim upon the property of the former. It is a matter entirely for the regulation of civil society; nor is there any fundamental principle of justice growing out of such relation, that calls, upon Government to enforce the payment of debts, to the uttermost farthing which the debtor may possess; and that the modification and extent of such liability, is a subject within the authority of State legislation, seems to be admitted by the uninterrupted exercise of it. It may be safely affirmed that in most, if not all the States, some limitation of the right of the creditor over the property of the debtor, has been established. Do these Statute regulations impair the obligation of contracts ? I presume this will not be contended for:” 12 Wheaton, 309; 7 Curtis, 178.
Mr. Story, Com. on Constitution, Book 3, chap. 34, sec. 1379, says: “Although there is a distinction between the obligation of a contract, and a remedy upon it; yet if there .are certain remedies existing at the time when it is made, all of which are afterwards wholly extinguished by new laws, so that there remains no means of enforcing its obligation, and no redress — such an abolition of all remedies operating in praesenti, is also an impairing of the obligation of such contract. But every change and modification of the remedy, does not involve such a consequence. No one will doubt that the Legislature may vary the nature and extent of remedies, so always that some substantial remedy be, in fact, left. *117 Nor can it be doubted that the Legislature may prescribe the times and modes in which remedies may be pursued, and bar suits not brought within such periods, and not pursued in such modes. Statutes of limitation are of this nature, and have never been supposed to destroy the obligation of contracts, but to prescribe the times within which that obligation shall be enforced by a suit; and in default, to deem it either satisfied or abandoned. The obligation to perform a contract, is coeval with the undertaking to perform it; it originates with the contract itself, and operates anterior to the time of performance. The remedy acts upon the broken contract, and enforces a pre-existing obligation. ’’
These authorities seem to us to establish the following propositions :
That the contracts, though regulated by law, are the acts of the parties, and existing laws form no part of them; that the agreement of the parties, not the law, constitutes their obligation.
That the obligation of the contract once established, it cannot be abrogated or relaxed by State legislation.
That there is an essential and substantive distinction between the obligation of a contract, and the means which Government may furnish to enforce it. The latter constitutes the remedy.
That a prohibition to pass any law impairing the obligation, does not imply a prohibition to vary the remedy.
That the Legislature may, in their discretion, vary the nature and extent of remedies, so that always some substantive remedy be, in fact, left.
This brings us to the examination of the Statute under consideration, and the application to it of these *118 ¡principles. In conducting our inquiries, we derive what assistance we can from the previous labors of the Court. The legislation of the State has not been such as often to require this course of investigation. Our attention has been invited by counsel, to the case of Townsend vs. Townsend, (Peck, 1,) as controlling the decision of this. That case involves the constitutionality of three Acts of the Legislature, passed in 1819, and one passed in 1820. They are all of similar import, and the following may be taken to illustrate the character of the whole. All involve the same principle — indeed, are nearly identical in terms:
“Be it enacted, etc., That when any bank in this State, has or shall obtain a judgment against any person or persons, no clerk of any Court, nor any Justice of the Peace in this State, shall hereafter issue any execution on such judgment, until two years from the time of the rendition of such judgment shall have elapsed, unless said bank, by its attorney, or agent properly authorized thereto, shall indorse on the execution, that 'notes on the bank thus obtaining judgment, will be taken in discharge and payment of such .execution, in addition to the notes of the Bank of the State of Tennessee, and its branches, and the Nashville Bank and its branches, and such other bank notes as may be at par in said last mentioned ■banks.” •
The other Statutes impose the same restrictions upon all judgments, wherever and by whomsoever obtained. They wer.e declared unconstitutional and void. It is a general rule, that the positive authority of a decision is coextensive only with the facts on which it is made: Sturgis vs. Crowninshield, 4 Wheaton, 122. To this ex *119 tent we recognize the authority of this decision. The acts in question were a manifest violation of the constitutional inhibition to the States making “anything but gold and silver coin a tender in payment of debts,” the subject of tender being withdrawn from the States and committed to the General Government. So the Court held — treating the suspension of execution as a penalty inflicted upon the creditor for refusing to receive bank notes for his debt. With this conclusion we are satisfied. It is true, that the Court argues a violation, also, of the prohibition “to pass any law impairing the obligation of contracts.” Having already decided th'e unconstitutionality of the Acts, “upon a correct interpretation of the clause prohibiting tender laws,” nothing further was necessary. The Court held that “the law is the source of the obligation; and the extent of the obligation is defined by the law in use at the time the contract is made.” This doctrine, we have seen, is repudiated by the Supreme Court of the United States, in the case of Ogden vs. Saunders. We yield to this authority; and in doing so, must abandon the conclusion that the obligation is impaired by a law, which merely varies the extent of the remedies. The Court further holds that, though the Legislature may alter remedies, they must not, so far as regards antecedent contracts, be rendered less efficacious or mbre dilatory, than those ordained by the law in being when the contract was made, if such alteration be the direct and special object of the Legislature, apparent in an Act made for the purpose. This principle was not essential to the decision, and was subsequently denied by the Court, in the case of Woodfin vs. Hooper, 4 Hum., 13. The Leg *120 islature, in 1842, abolished the writ of capias ad satis-faciendum, and took away forever from the creditors, the right to imprison the body of his debtor. The plaintiff insisted that this act impaired the obligation of his contract, made previous to its passage, and, therefore, could have no obligatory force in his case. He urged, this doctrine from the opinion in Townsend vs. Townsend; and insisted that the Act of 1842, suspended or abolished the only efficient remedy in his ease, forever. The Court held, upon the authority of the Supreme Court of the United States, and in disregard of the doctrine asserted in Townsend vs. Townsend, “That the right to imprison a debtor is no part of the contract, and he may be released from imprisonment without impairing its obligation;” “and that the States have a right to regulate or abolish imprisonment for debt, as a part of the remedy for enforcing the performance of contracts:” Mason vs. Haile, 12 Wheaton, 370; and declared that, though the Legislature could not extinguish all remedies existing when a contract was made, so as to leave the creditor with no, means of enforcing its obligation, and without redress; yet, it might vary the nature and extent of remedies, so always that some substantive remedy, be, in fact, left.”
Thus the declamations of the Court, in Townsend vs. Townsend, cited and relied upon by the counsel, if they can he held ever to have had any other authority than extra judicial dicta, are neutralized by the decision in Woodfield vs. Harper. This . case does more; it determines that the State Legislature may, without infringing the Constitution, deprive the creditor of his most cogent and effective remedy, and to an angry and baf *121 fled creditor, the most cherished, by releasing his debtor from imprisonment; and restricts us, in the present instance, to the inquiry, whether the Act of 26th January, 1861, leaves, in fact, to the creditor any substantive remedy.
The Act, so far as it is necessary to examine it, is as follows:
"Be it enacted, &e., That from and after the passage of this Act, all judgments and decrees which shall be rendered in any of the Courts of Record in this State, or which shall be rendered by Justices of the Peace of this State, for money, shall be stayed by such Courts and Justices for the period of twelve months from the rendition of such decree or judgment; Provided, that the defendant, or defendants, in said judgment or decree, shall appear before said Courts of Record, during the term of such Court, or within two days after the rendition of the judgment before Justices of the Peace, and give good and ample security for the stay of execution, to be approved of by said Courts or Justices; which stay shall operate as a judgment against the security of said Courts, or before said Justices.”
Other provisions are contained, looking to the subsequent insufficiency of the security. The Act expired, by its own limitation, on the 1st of July, 1862.
Whatever may be our opinion as to the policy of the law, it is our duty to administer it, unless we are clearly satisfied of its unconstitutionality. We simply repeat the uniform language of the Supreme Court of the United States, in saying that “it is but a decent respect due to the wisdom, the integrity and the patriotism of the legislative body by which any law is passed, *122 to presume in favor of its validity, until its violation of the Constitution is proved beyond all reasonable doubt:” 12 Wheaton, 270.
This Ant undoubtedly varies the extent of the remedy existing at the time of its passage, and was manifestly intended to afford another, equally certain to the creditor, and more favorable to the debtor. It was passed during the period of impending bankruptcy which immediately preceded the rebellion, and which had much to do in stimulating its earlier movements. The only question is, does it in fact, leave to the creditor “a substantive remedy” against the debtor? To state the question, is to decide it. Judgements and decrees were to be rendered as heretofore; then, at the option of the debtor, the creditor had execution at once, or ‘‘good and ample security,” and execution against both debtor and security at .the end of twelve months. This remedy must be admitted to be real, substantial and effective; and not merely nominal and illusory. We are not prepared to say that in the peculiar condition of affairs at that time, it may not have appeared to the Legislature which enacted it, as supplying to the creditor, by giving to the debtor time, and keeping alive his hope and arousing an increased energy, and interesting friends directly in his behalf, a higher assurance of ultimate satisfaction. However that may have been, our decision cannot depend upon the comparative efficiency of remedies. Since a remedy, solid and valuable, has been provided, we are required by the previous decisions of the Court, to declare this a good and valid Act, and to give it effect. We have had our attention directed to several cases from the courts of some of the sister *123 States, supposed to be in conflict with these views. Only brief notes of the cases have been accessible, so that we are unable to ascertain the precise facts.
This opinion is confined to the case and to the part of the Statute actually under consideration. There are other provisions contained in it which we have had no occasion to examine, and about the validity of which we express no opinion.
The Court, taking such action as should have been taken in the Court below, will direct that the offered security be accepted; and the period of the stay having long since elapsed, execution will issue immediately against the defendants in judgment and their security, for the amount of the judgment, with interest from the date of its rendition until collected, and the costs of the Circuit Court.
HaweiNS, J., dissenting..