## ROCKWELL *v.* HUBBELL'S ADMINISTRATORS.

2d 197
73  181
2d 197
125  232

The act of 1842 (S. L. 1842 p. 70,) exempting from execution property not exempted by previous statutes, operates upon the remedy to enforce contracts made before it took effect.

It does not, in so far as it is thus retrospective, *impair the obligation of contracts.*

CASE reserved from Oakland Circuit Court.   Replevin brought by Rockwell against Hubbell for one yoke of oxen.   Hubbell having died before issue joined, his administrators were permitted to appear and defend the action, and plead, that at the November term, 1840, of Oakland circuit court, the administrators of one Green, recovered a judgment against Rockwell and another for $85; that an execution was issued thereon, July 31, 1844, and delivered to Hubbell, who was then a deputy sheriff of Oakland county; and that on the 5th day of August following, he levied upon the oxen in controversy by virtue of this execution.   Replication, that at the time of the levy Rockwell was a practical farmer, and the yoke of cattle levied upon was the only team he had, and was, therefore, exempted from execution by the provisions of the exemption law of 1842.   S. L. 1842 p. 70 § 1.   To this replication there was a general demurrer and joinder therein.

*C. C. Parks*, in support of the demurrer.

*Geo. W., and Moses Wisner,* contra.

RANSOM, C. J. delivered the opinion of the Court.   The demurrer presents two questions:—

1. Whether the exemption law of 1842 (S. L. 1842 p. 70) applies to executions for the collection of debts contracted before it took effect; and, if it does, then,

2. Whether, in so far as it is thus retrospective, it impairs the obligation of contracts, and is therefore unconstitutional and void.

We entertain no doubt as to how the former of these questions should be answered.

The first section of the act provides, that, "to each practical farmer, one yoke of cattle" "shall be, and the same are hereby exempted from execution or sale, for any debt, damages, fine or amercement, whatever."

By the third section it is declared, that "all acts and parts of acts heretofore passed and now in force, for the exemption of property from execution or sale, for any debt, damage, fine, or amercement, are hereby repealed." It can hardly be supposed that the legislature intended to repeal all exemption laws then in force, and leave the whole debtor class entirely at the mercy of creditors—not even securing to them or their families, their necessary clothing or cooking utensils.

It will be borne in mind, that at the time of the passage of the act of 1842, there was an unprecedented amount of indebtedness pressing upon the business community, arising out of the extravagant speculation and overtrading of previous years. We cannot conclude, that at such a juncture, the legislature would take away *all* protection from debtors, whose liabilities, in *most* instances, had been incurred in the improvident purchase of property at exorbitant prices, and in many, for that which was utterly worthless, and at the same time provide a greatly enlarged exemption, for the benefit of those who might thereafter become indebted.

The act enumerates all the articles exempted from execution by the then existing laws, and adds thereto many others, and declares that the whole shall be and are exempted from execution.

Keeping in view the fact that exemption laws had al-

ways formed a part of the legislative policy of our own state, and, indeed, of all the states of this union, we cannot doubt but the legislature intended to embrace by its provisions, existing cases, as well as those that should thereafter arise.

2. We will proceed, then, to consider the second and more important question, viz:—Whether the law, in so far as it applies to executions for the collection of debts contracted before its passage, impairs the obligation of contracts, and is therefore unconstitutional and void.

The case of *Bronson* v. *Kinzie,* 1 How. 311, and *Mc Cracken* v. *Hayward,* 2 Id. 608, are principally relied upon by the defendant's counsel, to establish the unconstitutionality of the act.    But to my mind, neither of those cases sustains the position he assumes.    The first involves only the question of the constitutionality of the appraisal laws of Illinois, as applicable to sales made under pre-existing mortgages.    The second, (*McCracken* v. *Hayward,*) extends the principle decided by the former, to sales upon execution.    Although, in deciding those cases, the court used very broad and comprehensive language, still the only question before them, which they properly *could* or which they *did* decide, was, that the laws of Illinois providing for the valuation of property prior to its sale upon mortgage foreclosure, and executions upon pre-existing contracts, came within that clause of the 10th section of the first article of the constitution of the United States, which prohibits a state from passing any law impairing the obligation of contracts, and were therefore inoperative and void.

So far, however, as those adjudications bear in express terms, upon the case at bar, they tend to sustain our exemption law.

In *Bronson* v. *Kinzie,* Chief Justice *Taney,* alluding to the contract of Kinzie, and the valuation laws of Illinois,

says: "If the laws of the state, passed afterwards, (that is, after the making of the contract,) had done nothing more than change the remedy upon contracts, they would be liable to no constitutional objection; for undoubtedly, a state may regulate at pleasure, the modes of proceedings in its courts, in relation to past contracts as well as future. It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations. It may, if it thinks proper, direct, that the *necessary impliments* of agriculture, or the tools of the mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to execution on judgments. Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not, by every sovereignty, according to its own views of policy and humanity. It must reside in every state, to enable it to secure its citizens from unjust and harassing litigation, and to protect them in those pursuits which are necessary to the existence and well being of every community." If, as is thus conceded, a state legislature may exempt from seizure, upon execution, necessary *implements* of agriculture, may it not also exempt necessary teams to render those implements available? To hold the contrary, would seem to me to be absurd.

Would such exemption impair the obligation of the debtor's contract? Not in the slightest degree, that I can perceive. The obligation of a contract, within the meaning of the constitution, is that which binds the party making the contract, to a performance of the promises and covenants which it contains. Does a law which reserves to a party his plow, his cart, or his team, release him from the performance of such promises or covenants? Not at all. His obligation remains in full force, not dissolved, or any manner weakened or impaired.

I am aware, that in the case of *McCracken* v. *Hayward,* Judge *Baldwin* said, that the laws of Illinois relating to judgments and executions, existing at the time the defendant's contract was entered into, were as perfectly binding upon him, and as much a part of his contract, as if they had been set forth in its stipulations, in the very words of those laws ; and, had the court then been considering the validity of our exemption law or a similar one of any other state, their decision, undoubtedly, must have settled the rights of the parties here.  But the precise question presented by *this* case, we have seen, was not before the court, in the case referred to ; and, doubting as I do, (most deferentially to be sure,) the soundness of the positions assumed by Mr. Justice *Baldwin,* in *McCracken* v. *Hayward,* I am unwilling to extend the principle of that case a single line beyond the limits prescribed by its *own facts.* And so, in effect, held Chief Justice *Gibson,* commenting upon the above cases in *Moore* v. *Chadwick,* decided in the Supreme Court of Pennsylvania, in September, 1844. 6 Law Reporter, 433.

Can it be maintained  that an exemption law, existing at the time a contract is made, enters into  and forms an essential part of it?   To me, such a doctrine seems at war with all the settled principles and analogies of the law.   I cannot see on what ground it can be defended.   Would it not lead to consequences altogether absurd?   If an exemption law, in force at the time a contract is made, forms one of its essential elements, the law must, in the quaint language of the older books, "go with, and attend upon the contract."   Suppose a contract was made in the  state of New York, and that there was no exemption law at the time in force in that state.  Suppose further, that such contract were subsequently sent here to be enforced.   Can there be a doubt as to whether our exemption law would control an execution  issued  to  collect a judgment upon

that contract? None whatever.—Suppose again, that a contract were made in a state by the laws of which the property of execution debtors was exempted from levy or sale, to the amount of $1000, and that the contract were sought to be enforced in another state, where no exemption law existed. Would not the *whole* of the debtor's property be liable to seizure and sale, for the satisfaction of his debt? Unquestionably it would.—Let us put another case: Suppose a promissory note is made in a State where the remedy by assumpsit is expressly taken away by statute, and the party is confined to the action of debt alone. Will it be pretended that the payee or other holder of such note could not follow the maker into this state, and enforce its payment by the usual remedy here,—the action of assumpsit? Not for a moment.—Suppose, again, a note made where all the usual remedies upon such contracts exist, and that the maker goes into a jurisdiction, where the action of debt only is given in such case. Can the holder of the note there bring assumpsit upon it? Certainly not. And yet, if co-existing remedies form an essential part of a contract, he may do so most clearly.

The doctrine that the remedy constitutes a part of the contract, Judge *McLean* has said, "is a mere abstraction, which cannot be carried into practical operation." 1 How. R. 328. And is it not so? If the remedy is a part of the contract, it must remain so until the contract is performed or rescinded by the parties. No change of the forms of actions, or other proceedings, can affect existing contracts : and, if judicial action be necessary to enforce a contract, enquiry must be made, *not* as to what remedies exist at the time of commencing suit, but what were the remedies existing at the time the contract was entered into, and the latter, and no others, must be resorted to. Such a rule would lead to endless confusion and difficulty, and could not be applied. The cases are numerous, in which

principles, strongly analogous to those relied upon in this case to sustain the plaintiffs' replication, are recognised as settled law.

It was adjudged by this court, at the last term, in the case of *Bronson* v. *Newberry*, (ante. p. 38,) that the act of our legislature, passed in 1839, abolishing imprisonment for debt, extended to pre-existing as well as future contracts, and yet, that it was not within the inhibiting clause of the constitution.

So in *Sturges* v. *Crowninshield*, 4 Wheat. 200, Chief Justice *Marshall* says, expressly, that imprisonment is no part of the contract, and simply to release the prisoner does not impair its obligation.    *Mason* v. *Haile*, 12 Wheat. 370 ; *Beers* v. *Haughton*, 9 Pet. R. 359 ; and 3 Story on Const. 250, are to the same effect.

It has also been repeatedly determined, that recording acts, and statutes of limitation, although made to affect existing contracts, were not, therefore, unconstitutional and void.

And the courts have all based their decisions on the ground that such legislation acted *on the remedy only*, without impinging at all on the obligation of contracts.

If non-imprisonment and limitation acts may be made to act upon existing contracts, why may not exemption laws ? Can any definable line of distinction be drawn between them ? I confess I can discover none.

We are, then, of opinion, that the replication in this case is sufficient, and the demurrer thereto should be overruled.

*Ordered certified accordingly.*