Nov. Term,
1861.

Scobey *v.* Gibson.

Scobey
v.
Gibson.

The act of *June* 4, 1861, (Acts Spec. Sess. 1861, p. 79,) providing for the redemption of real property sold upon execution, &c., so far as the same was intended to apply to sales on judgments rendered upon contracts existing at and before its passage, is in conflict with Art. 1, § 10 of the Constitution of the *United States,* which prohibits the passage of any law impairing the obligation of contracts.

*Thursday,*
*February* 6.

APPEAL from the *Decatur* Circuit Court.

PERKINS, J.—The only question in this case is whether the redemption law of 1861, (Acts 1861, p. 79,) is to be l eld applicable to sales on judgments upon contracts existing at and before its passage. The act provides that in all cases of sales by the sheriff, &c., on execution, &c., after its passage, the sheriff shall not give the purchaser a deed for, and possession of, the property sold, but only a certificate entitling him to a deed and possession in one year from the sale, if the property is not redeemed.

In legal effect, what is the operation of this statute? It is to prohibit, for one year, the absolute sale of property for the purpose of collecting a debt due. In place of such sale, it authorizes the sheriff to make a contract for the absolute sale of property after the lapse of one year's time, unless such contract shall be defeated by the performance of a specified condition, namely, the return of the purchase money paid, with interest, by the expiration of said year; it authorizes, in other words, the sheriff, in legal effect, to mortgage the debtor's land for one year, to any one who will advance the amount required by law, upon its appraised value, the mortgage to become absolute, and free from an equity of redemption, at the end of a year, if the money advanced is not repaid with interest.

What is the influence of, such a statute upon the collection of debts? Its tendency is to delay. It embarrasses the collection, because it deprives the creditor of the right which the law, at the date of his contract, gave him of selling the absolute fee of the debtor's real estate.

And the question is, if held to operate upon existing

contracts, will the act conflict with that clause of § 10, Art. 1 of the Constitution of the *United States*, which declares that no State shall pass any law impairing the obligation of contracts? What constitutes such a law?

A few years ago, the Legislature passed a law prohibiting the sheriff to sell the debtor's property unless the half of the appraised value was bid for it. Before that time, property had sold for what it would bring. The appraisement law was held not to operate on existing contracts; and why? Not because it forbade the sale of property for their enforcement; it did not do that; but because it deprived the sheriff of the absolute power to sell the fee at all events; it left him but the conditional power to sell; the power of selling if he could get a certain price, not otherwise. It tended to embarrass, and thereby to prevent the sale, and thus delay the collection of the debt. So, too, awhile ago, an additional stay of execution was given upon judgments, by an act of the Legislature. This act was held inoperative as to existing contracts; and why? Not because it canceled obligations, but because it delayed their collection by the process of the law. This was the natural, necessary, and intended effect of both of the above mentioned statutes, and it is, also, of the redemption law. If the decisions upon the operation of the first two named laws were right, and we are bound by them, then, beyond doubt, the redemption law, in question, must be held inoperative upon existing contracts. See the cases collected in Gavin & Hord's Ed. of R. S., Vol. 1, p. 10.

It is said, that where a purchaser bids off the property and pays the money under the present law, he has no right to object to the redemption, as he buys in face of the law; but it is a maxim, that every man is bound to know the law, and act accordingly. Hence, the man who buys does so knowing that the law will not, and can not, operate to deprive him of his deed and title; and he must be taken to make his bid in the light of, and influenced by, such knowledge. And, further, the law must be uniform in its operation, alike upon all.

Again, it is urged that the Legislature has a right to change legal remedies; that it is only the obligation of contracts

SCOBEY
v.
GIBSON.

that can not be impaired; and it is claimed that the redemption law affects the remedy only.

It is freely admitted that the State, for convenience, may change legal remedies; may vary the times of holding courts, shift jurisdiction from one to another, change forms of action, of pleadings and of process, &c.; and that such legislation may, incidentally, delay, somewhat, the collection of given debts; but such is not the purpose of this legislation, and while its validity is admitted, it may also be asserted, that the Legislature can not, under the guise of legislating upon the remedy, intentionally, in effect, impair the obligation of contracts; and it may be further laid down, that any legislation, professedly directed to the remedy, which deprives a party of one substantially as efficient as that existing at the making of the contract, does impair the obligation of the contract. Ind. Dig., § 55, p. 271. In *Gantly's Lessee* v. *Ewing*, 3 How. (U. S.) 707, Judge *Catron*, in delivering the opinion of the Court said: "This Court held in *Bronson* v. *Kinzie*, 1 How. 319, that the right, and a remedy substantially in accordance with the right, were equally parts of the contract, secured by the laws of the State where it was made." See, also, 1 Blackf. by Peele & Davis, p. 220, note. Also, 4 Cal. Rep. 127; 5 *id.* 401; 1 Manning (Mich.) Rep. 309. It may, perhaps, be questioned whether the redemption law in question is properly classed as legislation touching the remedy. It does not operate upon terms of court, upon pleading or practice in obtaining judgment, nor upon process upon judgment. But however classed, it restricts, curtails the right of the judgment creditor, in relation to subjecting the property of the debtor to execution for the payment of given debts. It may not diminish the fund of the debtor applicable to the payment of his debts; nor did the appraisement law, nor the stay law; but it limits, curtails materially, and embarrasses the right of the creditor, in given cases, in subjecting the entire amount of the debtor's property subject to execution to the payment of the debt in suit. *Curran* v. *Arkansas*, 15 How. (U. S.) 304.

This Court judicially knows, and it must decide, the question, as one of law, upon its judicial knowledge, that the

right to sell, at once, the entire, absolute fee simple in land, and give the purchaser possession, is worth more, will be more likely to realize the amount of money due on a particular judgment, than the restricted right of selling a conditional interest in such land; and that, hence, the taking away of such absolute right may tend to defeat, in given cases, the collection of debts due. A purchaser will give more for an absolute title than a conditional one; and few moneyed men will be found to buy conditional titles as mere investments, which may be defeated by simply refunding them their money with ten per cent., when a much higher rate may be obtained on the most select securities. But suppose the act in question is to be regarded as directed to the remedy; still, as we have seen, an act thus directed may impair the obligation of contracts. It is very doubtful whether those cases decided upon the general rule of international law, that the *lex loci* governs as to the interpretation and effect to be given to the terms of a contract, and the *lex fori* as to the remedy upon it, are safe guides to rely upon in determining the force to be awarded to the constitutional provision quoted. These express constitutional restrictions upon the legislative power are peculiar to American government, and must be interpreted in accordance with the spirit and purpose of their adoption. Stay and relief laws, enacted by various States before the adoption of the Federal Constitution, were, in part, at least, the evil which it was designed to prevent the repetition of. The learned Chancellor *Desaussure*, of *North Carolina*, who lived in the times mentioned, and who went upon the Equity Bench in 1808, in a note to *Glaze* v. *Drayton*, vol. 1, p. 109, of his Reports, (a case decided in 1784,) says: "The Legislature, in consideration of the distressed state of the country, after the war, (Revolutionary war,) had passed an act preventing the immediate recovery of debts, and fixing certain periods for the payment of debts far beyond the periods fixed by the contract of the parties. These interferences with private contracts became very common with most of the State Legislatures, even after the distress arising from the war had ceased in a great degree. They produced distrust and

Nov. Term, 1861.

SCOBEY
v.
GIBSON.

irritation throughout the community to such an extent that new troubles were apprehended, and nothing contributed more to prepare the public mind for giving up a portion of the State sovereignty, and adopting an efficient National Government, than these abuses of power by the State Legislatures." See, also, on this point, Rawle on the Constitution, and Sergeant's Constitutional Law.

We have been controlled, in coming to our conclusion, by the decisions bearing upon the question latest made by the Supreme Court of the *United States*. We may most safely, we think, presume that that Court will follow, and not depart from, those decisions. Should such be the case, it would be detrimental to the public should this Court decide the redemption laws operative upon existing contracts, thus leading debtors to suffer their lands to be sold upon the faith of a right to redeem, which the Supreme Court might take away. While, should this Court decide against the redemption, it will put debtors on their guard to take care of their property; and should the Supreme Court afterward decide in favor of redemption, the decision of this Court will not have worked harm to any great extent.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

### DISSENTING OPINION.

HANNA, J.—In the conclusion arrived at by the Court, I can not fully concur, and shall be compelled to occupy some space to give my reasons.

In the tenth section of the first article of the Constitution of the *United States*, it is, among other things, provided that "no State shall ..... pass any ..... law impairing the obligation of contracts." And section twenty-four of the first article of our State Constitution, declares that "no *ex post facto* law, or law impairing the obligation of contracts, shall ever be passed."

The laws of this State, passed at the Special Session of the Legislature in the year 1861, contain an act, approved *June* 4, 1861, the first section of which is as follows:

"That whenever, hereafter, any real property, or any interest therein, shall be sold on any execution, or order of sale, issued upon any judgment, decree, or other judicial proceeding within this State, the owner thereof, his heirs, executors, administrators, or any mortgagee, or judgment creditor having a lien upon the same, may redeem such real property or interest therein, at any time within one year from the date of such sale, by paying to the purchaser, his heirs, or assigns, or the clerk of the court from which such execution or order of sale was issued for the use of such purchaser, his heirs, or assigns, the purchase money, with interest thereon, at the rate of ten per cent. per annum."

The second section points out the duty of the officer making sale; and provides that the judgment debtor shall be entitled to the possession during said year, and, if not redeemed, shall be liable for rents. The third section gives a mortgagee, or judgment creditor, who shall redeem, a lien for the money so paid.

The question presented for consideration is, whether contracts in existence at the time this law came in force are subject to its provisions, in view of the prohibitions of the Constitution above quoted.

Judicial investigation has been directed to two points arising under this clause of the Constitution of the *United States; first*, as to what is a contract within the sense thereof; *second*, as to what interference, or extent of interference, with a contract, should be considered as impairing the obligation thereof.

In the case at bar there need be no time spent upon the first inquiry, as the contract under consideration clearly falls within the sections quoted. But, see *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Fletcher* v. *Peck*, 6 Cranch, 87; *Plant. Bank* v. *Sharp*, 6 Howard, 301; *The People* v. *Morris*, 13 Wend. 325; *Terrett* v. *Taylor*, 9 Cranch, 43; *East Hartford* v. *Hartford Bridge Co.*, 10 How. 511; *Conner* v. *The City of New York*, 1 Selden, 285; *The West River Bridge Co.* v. *Dix*, 6 How. 507; *The Trustees of Vincennes University* v. *Indiana*, 14 How. 268; *Providence Bank* v. *Billings*, 4 Peters, 514; *Charles River*

*Bridge* v. *Warren Bridge*, 11 Peters, 548, and authorities cited; *The Richmond Railroad Co.* v. *The Louisa Railroad Co.*, 13 How. 81; *White* v. *White*, 5 Barb. 474; *Londonderry* v. *Chester*, 2 N. H. 268; *Maguire* v. *Maguire*, 7 Dana, 183; *Green* v. *Biddle*, 8 Wheat. 1; *New Jersey* v. *Wilson*, 7 Cranch, 164; *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Ogden* v. *Saunders*, 12 *id.* 213; *Mason* v. *Haile*, *id.* 370; *Fisher* v. *Lacky*, 6 Blackf. 373; *Bronson* v. *Kinzie*, 1 How. 311; *McCracken* v. *Hayward*, 2 *id.* 608; *Curran* v. *State of Arkansas*, 15 *id.* 318; *Morse* v. *Goold*, 1 Kernan, 281; *Rockwell* v. *Hubbell*, 2 Doug. 197; *id.* 38; *Wilson* v. *Hardesty*, 1 Mar. Ch. 66.

As to the second inquiry: certainly as long back as the *February* term, 1819, of the Supreme Court of the *United States*, a distinction was taken between the *obligation* of a contract and the *remedy* given by the Legislature to enforce that obligation. *Sturges* v. *Crowninshield*, *supra*. And that without impairing the obligation, the remedy might be modified. This view of the clause of the Constitution was sustained in *Mason* v. *Haile*, 12 Wheat., and *Wilkinson* v. *Leland*, 2 Peters, and, aside from the case of *Green* v. *Biddle*, 8 Wheat., which appears to have turned upon the compact between *Virginia* and *Kentucky*, continued to be the rule of construction in reference to this clause of the Constitution until the *January* term, 1843, of the same Court, when the case of *Bronson* v. *Kinzie* came up, in which it has been generally understood the Court somewhat modified the ruling by narrowing the limits within which the remedy might be affected by State legislation. But still, this case, and those of *McCracken* v. *Hayward*, and *Curran* v. *The State of Arkansas* following it, viewed in connection with those which had preceded them, upon the same point, would appear to indicate the opinion that State legislation on the remedies of prior contracts would be constitutional if such legislation should still leave substantial and efficient means of enforcing them. This view is sustained by several cases decided by State tribunals. *James* v. *Stull*, 9 Barb. 482; *Bruce* v. *Schuyler*, 4 Gilm. 221; *Stocking* v. *Hunt*, 3 Denio, 274; *Howard* v. *Kentucky, &c. Ins. Co.*, 13 B. Mon. 285.

Nov. Term.
1861.

SCOBEY
v.
GIBSON.

I do not propose to discuss the questions, whether this apparent conclusion can be supported by sound reasoning, nor whether the real *obligation* of a contract does not consist of the *remedial* right to coerce performance, existing at the time the contract is entered into, rather than in the naked agreement, promise, or understanding of the parties, or whether the whole right of prescribing the remedy is in the States, severally. Nor do I propose to examine the questions of who should determine whether substantial and efficient means would remain, upon the enactment of a given statute, to enforce the contract, or whether the obligations thereof were materially impaired thereby. But conceding that the conclusion arrived at is binding upon us, I will examine its bearing upon the case at bar, and as affecting the statute under consideration.

By the adoption of the clause of the Constitution of the *United States*, it was assumed that the legislative power of the States possessed the right, unless restrained by fundamental law, to so shape their enactments as to impair the obligations of existing contracts. How far it was agreed they should be prohibited from the exercise of that power, has, as we have seen, been the subject of much diversity of opinion. If the law of the contract, as it is termed, that is, the laws which existed at the time the contract is made, enters into and forms a part of the contract, including the laws giving a remedy on the contract, then, perhaps, the first question would be, under such a construction, should the law of the place where the contract is made, or of the place where its enforcement is attempted, govern, in a case where they are different at its date? The difficulty of this question will be appreciated when we recollect that all laws authorizing original, mesne, or final process—and creating officers to execute, and prescribing their duties in executing the same—creating tribunals to hear and determine suits, prescribing the rules of evidence by which they shall be guided, and otherwise directing their duties, have reference directly, or indirectly to the remedy. It is apparent that if the law of the place when the contract was made, forms a part of the contract, and no State can impair the same as to the remedy,

it would operate, in effect, as almost an entire surrender of State sovereignty as to legislation upon such contracts, because a debt contracted in a particular State, but payable generally, is, by operation of law, payable everywhere, and may be enforced wherever the debtor, or his property, can be reached. I am not now discussing the applicability of the law of the place of the contract, in expounding the same, except so far as the law of the remedy, in the place where it is sought to enforce the contract, is involved. As to that point there appears but little conflict. Remedies are to be sought according to the forms and order of judicial proceeding prescribed by the law of the place where the action may be instituted, without having any reference to the place where the right accrued. 2 Kent's Comm., § 27; *Donn* v. *Lippman*, 5 Clark & Finnell R. 1. In this case Lord *Brougham* said, that "Whatever relates to the remedy to be enforced, must be determined by the *lex fori*, the law of the country, to the tribunals of which the appeal is made....... The parties do not necessarily look to the remedy when they make the contract." As to the application of this general principle of law, in regard to a contract made in one State and attempted to be enforced in another, see *Bank of the United States* v. *Donnelly*, 8 Peters, 361, in which the Court held this language: "But whatever may be the legislation of a State as to the obligation or remedy on contract, its acts can have no binding authority beyond its own territorial jurisdiction. Whatever authority they have in other States, depends upon principles of international comity, and a sense of justice. The general principles adopted by civilized nations is, that the nature, validity, and interpretation of contracts are to be governed by the law of the country where the contracts are made, or are to be performed. But the remedies are to be governed by the laws of the country where the suit is brought." See, as to same point, *Fenwick* v. *Sears*, 1 Cranch, 259; *Wilcox* v. *Hunt*, 13 Peters, 378; *Warren* v. *Lynch*, 5 Johns. R. 239; *Jones* v. *Hooks, Administrator*, 2 Rand. Va. R. 303; *Pearsall* v. *Dwight*, 2 Mass. R. 84; *Hyde* v. *Goodnow*, 3 Comst. 270; *Ohio Insurance Company* v. *Edmondson*, 5 Louis. R. 295.

In view of the general principles of international law, and the consideration given in one State to the judicial proceedings of another, the Supreme Court said, in the case of *Sturgis*, in 4 Wheat., that "The distinction between the obligation of a contract, and the remedy given by the Legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified, as the wisdom of the nation may direct." This was followed up by the Court, in *Bronson* v. *Kinzie*, in this language: "Undoubtedly a State may regulate, at pleasure, the modes of proceeding in its courts in relation to past contracts, as well as future..... and, although a new remedy may be deemed less convenient than the old one, and may, in some degree, render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy, or directly on the contract itself." In this connection the language used in *Green* v. *Biddle*, in regard to the compact between *Virginia* and *Kentucky*, is referred to approvingly, and as applicable to contracts, to wit: "It is no answer that the acts of *Kentucky*, now in question, are regulations of the remedy, and not of the right to the lands. If these acts so change the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they directly overturned his rights and interests."

Upon a slight examination of these and other cases, they would appear scarcely reconcilable. In *McElmoyle* v. *Cohen*, 13 Peters, 312, it is said: "But the point might have been shortly dismissed with this safe declaration, that there is no direct constitutional inhibition upon the States, nor any clause in the Constitution, from which it can be even plausibly inferred that the States may not legislate upon the remedy in suits upon the judgments of other States, exclusive of all interference with their merits." Now the *merits*

Nov. Term, 1861.

SCOBEY
v.
GIBSON.

would appear, from the decision of the same Court, hereto-fore quoted, to involve matter affecting the nature, validity, interpretation or discharge of the contract, and not *remedies* provided for enforcing the obligations thereby incurred. So it has been repeatedly held, that a binding statute may be enacted, and pleaded in bar of a prior contract, shortening the time within which the obligation may be enforced, thereby defeating the action.

Perhaps these decisions can be reconciled upon the language of Lord *Brougham*, in the case heretofore referred to: "When both parties reside in the country where the act is done, they look of course to the law of the country in which they reside. The contract being silent as to the law by which it is to be governed, nothing is more likely than that the *lex loci contractus* should be considered at the time the rule; for the parties would not suppose that the contract might afterward come before the tribunals of a foreign country. But it is otherwise when the remedy actually comes to be enforced. The parties do not, necessarily, look to the remedy when they make the contract. They bind themselves to do what the law they live under requires," &c.

So, in the case of *McCracken* v. *Haywood*, the Supreme Court say: "The obligation of the contract between the parties, in this case, was to perform the promises and undertakings contained therein; the right of the plaintiff was to damages for the breach thereof, to bring suit, and obtain a judgment, to take out and prosecute an execution against the defendant till the judgment was satisfied, pursuant to the existing laws of *Illinois*. These laws giving these rights were as perfectly binding on the defendant, and as much a part of the contract, as if they had been set forth in its stipulations in the very words of the law relating to judgments and executions."

Thus, it would appear, that as to contracts sought to be enforced in the place where they were entered into, where the parties reside, they are supposed to have looked to the law of the remedy, as well as that of the obligation; but that where they are being enforced in a place, and under laws, different from that of the contract, the remedy

is not supposed to have been looked to in making the contract.

But even with this view of the cases in our Supreme Court, I can not, with due deference to that august tribunal, believe that it was intended, the very broad language used in the latter part of the quotation above set forth, should receive the interpretation which it would, legitimately, bear, namely, that the contract gives to a party the right to enforce it, upon breach, by suit, take judgment, sue out and prosecute executions, in pursuance of the law existing at the time of the contract; and that no law can be made by the Legislature of the State, changing the mode of proceeding, so as to affect the rights thus entering into the contract.

If this is the construction, now to obtain, of the clause of the Constitution of the *United States*, it would overturn a long line of decisions, heretofore quoted, by which it appeared to be settled, that legislation affecting the remedy, only, was within the control of the States, severally. It can not be that in *Indiana*, in a suit upon a contract, entered into previous to 1842, we are to be remitted to the barbarous custom of imprisonment for debt. This was a part of the execution which might be sought upon judgments previous to that date; and if the language used in the case in 2 Howard is to receive the broad construction it would warrant, such remedy might be a part of the law of the contract. But it has been repeatedly decided that although the law of the remedy would give the right, at the date of the contract, to coerce the performance thereof, by imprisoning the person for a failure; yet, that remedy, although, perhaps, the principal one looked to to secure its performance, may be taken away without impairing the obligation of the contract. So, in the cases I have cited, it has been held to be within the competency of the State Legislatures to shorten the time within which actions shall be instituted, to change existing rules of evidence, and to prescribe new rules of evidence within certain bounds; all to affect past as well as future contracts.

Perhaps the language used in 2 Howard should not be considered as intended to apply to any subject of legislation

other than that immediately under consideration, namely, the competency of a State Legislature to change, as to existing contracts, the rates at which property should be sold, when aid is sought of remedial laws to enforce such contracts. This would leave the adjudications upon somewhat similar questions still in force, for our guidance.

Viewing the question in this light, and looking to the language of the chief justice, in 2 Howard, to wit, that "Although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional." I am not prepared to consider whether the statute under consideration, "so changes the nature and extent of existing remedies, as materially to impair the rights and interests" of the defendant in this case, 8 Wheat. 1, or whether "the provisions of the law are so unreasonable as to amount to a denial of a right, and call for the interposition of the Court." *Jackson* v. *Lamphire*, 3 Peters, 290.

*First*, then, as to the obligation of the contract, "in the sense in which those words are used in the Constitution, is that duty of performing it, which is recognized and enforced by the law." 15 How. 319.

I can not perceive that this statute, except as may be hereafter noticed, so changes the law, previously in force, "that the means of legally enforcing this duty are materially impaired." *Id.* Upon the failure of the defendant to comply with the terms of his contract, the law, existing at the time of entering into the same, and recovering judgment thereon, was the same; as to the right to institute, and the manner of prosecuting to final judgment, a suit to enforce the said contract; and also as to suing out and prosecuting execution upon such judgment as to personalty, and also as to real property, until the sale thereof should be effected; thus far there is no difference. Up to this point, under the old law, the right vested in the defendant to prevent the title to his land from passing from him, by paying the judgment and accrued interest, &c., at the rate of six per cent. per annum, in ordinary judgments. This law steps in and extends that right for one year, to such defendant, his heirs, &c., by

Nov. Term,
1861.

SCOOBEY
v.
GIBSON.

his paying the amount bid, the purchase money and interest, at the rate of ten per cent. per annum. In other words, a clear title can not pass to the purchaser, until one year expires, and in the mean time junior incumbrancers may, by taking certain steps, resort to said real property as a fund for the discharge of their claims. The inquiry presents itself at once, whether this "materially impairs the rights and interests" of the plaintiff. What are those rights and interests? As respects the point now being considered, he would have a right to resort to the real property as a fund to satisfy his debt. His interest would be to have the land, upon such enforced sale, pay such debt. His right to resort to such property is not affected. Is the interest he has in making his money out of it? Would it materially decrease the value of the fund which he thus had the right to resort to ? Two parties may he regarded as probable purchasers at such sale, namely, the plaintiff, and strangers to the record. As to the plaintiff, if he purchases he should be viewed as doing so to obtain satisfaction of his debt, and not as a matter of speculation; and that he thus takes title to the property to enable him to ultimately turn it into that which was promised—money. If he should obtain such title immediately after the purchase, he might, in a shorter time than a year, be able to so dispose of such property, or he might not. Conceding that he could, then the result is that, under this law, he would have to be delayed in disposing of it until the expiration of the year, or make such disposition conditionally. I can not see that the injury would be any thing more than the delay; for, in this country, where lands are continually increasing in value, it is not to be supposed the fund, for the payment of the debt, would deteriorate in value. So, if the land should be redeemed at the end of the year, the interest to be paid would be more than he would have been entitled to on an ordinary judgment, and the delay would be all he could complain of. As to mere inconvenience and delay, the reasoning in 1 Howard shows that they do not render the new act unconstitutional.

As to a purchase by a third person, a stranger; it would depend, perhaps, upon the motive with which the purchase

should be made, whether the property would bring as much when sold under this right to redeem, as without it. If a man desired the property for a home, the chances are that in a majority of such cases it would not. If the ʳpurchase was on speculation, I can see nothing to prevent it from selling for as much, subject to the redemption. Indeed, it appears to me it would, in a majority of such instances, bring more; for this reason, if circumstances were such that the bidder should anticipate redemption it would be a safe investment, at a rate of interest higher than usually received. If redemption would not be probable, then I can not see that the mere delay in the execution of the deed by the officer would make a material difference in the amount of the bid.

As it is within the knowledge of the Court, as a part of the public history of the State, that a very large part—much more than a majority of the purchases of real property at forced sales—when made by strangers to the record, are on speculation. I am of opinion that the general effect of the statute will not be to decrease the value of this fund for the payment of creditors; but that it will produce a contrary result.

Thus much as to that part of the statute affecting sales upon ordinary judgments; as to that part of the same, in reference to proceedings on orders of sale issued on decrees, so far as the same regulate such proceedings on the sale of lands on foreclosure of prior mortgages, a different conclusion would appear inevitable. The question is already settled by the case of *Bronson* v. *Kinzie, supra ;* and if it was not, the reasons are unanswerable.

The mortgage conveys the legal title to the mortgagee; subject to be defeated though, upon the performance of certain acts therein specified by the mortgagor. Where the mortgage is to secure the payment of money, the legal title thus transferred, is regarded, in equity, as a trust estate for the payment of the same ; and after such payment, from said estate, the balance is a resulting trust to the mortgagor. To avail himself of this security, and extinguish the equitable interest of the mortgagor, the mortgagee is entitled to the

aid of the Court, in procuring the sale of ,such property. Upon prior contracts of this character, this statute would operate directly, in this, that it might create an equitable estate in such lands in persons not known to such contract; and would extend the time in .which the equitable estate or interest of the mortgagor could be finally extinguished, and would thereby, as to duration, increase that estate.

I am of opinion, for these reasons, that so much of said law as affects ordinary judgments and proceedings upon prior contracts, is binding and valid; but so far as it may.affect judgments and proceedings upon ordinary mortgages, it is unconstitutional, and, therefore, invalid.

I have thus attempted to show that the law is valid, in view of the adjudications heretofore had in the Supreme Court of the *United States* upon kindred questions. I have not looked at it as an open question, but as one hedged around by those decisions. If they were out of the way a broader field would be open for discussion, in reference to the question of the validity of such statute, or its consonance with the constitutional provisions.

*Oscar B. Hord,* for the appellant.

*B. W. Wilson,* for the appellee.