PETITION OF LUCIUS S. PENNIMAN for a Writ of Habeas Corpus.

Under the provisions of the Gen. Stat. R. I. cap. 142, § 20, stockholders in manufacturing corporations are liable to arrest on execution issued upon a judgment against the corporation.

After a stockholder in a manufacturing corporation had been committed on an execution against the corporation pursuant to Gen. Stat. R. I. cap. 142, § 20, which is identical in its provisions with Rev. Stat. R. I. cap. 128, § 19, the General Assembly passed the following act, being Public Laws, cap. 600, March 27, 1877: —

" Section 1. No person shall hereafter be imprisoned, or be continued in prison, nor shall the property of any such person be attached, upon an execution issued upon a judgment obtained against a corporation of which such person is or was a stockholder.

" Section 2. All proceedings to enforce the liability of a stockholder for the debts of a corporation shall be either by suit in equity, conducted according to the practice and course of equity, or by an action of debt upon the judgment obtained against such corporation ; and in any such suit or action such stockholder may contest the validity of the claim upon which the judgment against such corporation was obtained upon any ground upon which such corporation could have contested the same in the action in which such judgment was recovered " : —

Held, on a petition for a writ of Habeas Corpus, that this act affected the creditor's remedy, but did not impair the obligation of the contract, in the sense of the Constitutions of the State of Rhode Island and of the United States.

Held, further, that this act was not repugnant to the constitutional provisions of the state or of the United States.

PETITION for a writ of habeas corpus. The facts are stated in the opinions of the court.

Edwin Aldrich & John D. Thurston, for the petitioner.

Tillinghast & Ely, for the committing creditor, contra, cited Marcy v. Clark, 17 Mass. 330 ; Stedman v. Eveleth, 6 Met. 125 ; Richmond v. Willis, 13 Gray, 182 ; Curtis v. Harlow, 12 Met. 3.

May 15, 1876. DURFEE, C. J. This is a petition for a writ of habeas corpus to relieve the petitioner from imprisonment in the Providence County jail. The petitioner is held by virtue of a commitment under an execution issued upon a judgment recovered against the American Steam & Gas Pipe Company, described in the execution as a corporation created by the General Assembly of Rhode Island. The execution is in the usual form of executions against corporations, and makes no mention of the petitioner. The officer, however, in his amended commitment states that the petitioner is now and was, when the judgment debt was contracted, one of the stockholders and members

of the company, and as such liable for the debt, the company being a manufacturing corporation established in the city of Providence, subject to cap. 128 of the Revised Statutes, and cap. 142 of the General Statutes, and never having filed any return in the city clerk's office in said city, as required by said statutes, and that the petitioner is committed for want of goods and chattels, or real estate of him or the corporation, to satisfy the execution. The committing creditor, who appears to oppose the release of the petitioner, contends that the commitment is authorized by Gen. Stat. R. I. cap. 142, § 20, inasmuch as the neglect of the company to file the required return or certificate subjects the stockholders to a liability for the company debts. The section is as follows : —

" Whenever the stockholders of any manufacturing company shall be liable, by the provisions of this chapter, to pay the debts of such company, or any part thereof, their persons and property may be taken therefor on any writ of attachment or execution, issued against the company for such debt, in the same manner as on writs and executions issued against them for their individual debts."

The petitioner contends that this section ought not to be so construed as to subject a stockholder to imprisonment for a debt of the corporation, unless he would be liable to imprisonment for the debt if it was his individual debt; and that, under Gen. Stat. R. I. cap. 211, an execution for debt does not run against the body of the debtor, except under circumstances which do not appear upon the record of the case against the American Steam & Gas Pipe Company to exist. In other words, the petitioner contends that, inasmuch as the statute (cap. 211, § 14) authorizes the issuing of executions against the body, in an action for debt, whenever the debt accrued before the 31st day of March, 1870, or whenever the debtor shall have been arrested and held to bail on an original writ or writ of mesne process, or whenever it shall be made to appear to the court rendering the judgment or to any justice thereof that he is about to depart the state without leaving therein sufficient real or personal estate to satisfy the judgment, or that he has been guilty of fraud in contracting the debt, or in the concealment, detention, or disposition of his property, and only in these cases: so, in an execution for debt against a

manufacturing corporation, the body of a stockholder can only be taken when one or another of the circumstances above recited has occurred.

We do not think this is an admissible construction. Chapter 211 prescribes the forms of executions, and directs how and when they shall be issued and returned. Upon a judgment for debt, an execution is issuable against the property of the debtor, as of course, and against his body as well as his property in the cases before enumerated.

If, however, the judgment is against a corporation, the execution can only run against property, for the corporation has no body to be taken. But cap. 142, § 20, provides that upon such an execution the persons and property of the stockholders may be taken in the same manner as upon executions issued against them for their individual debts. The words " in the same manner " do not, in our opinion, refer to chapter 211, for that chapter prescribes the forms of execution, but does not direct the manner in which they shall be served, or the manner in which persons or property shall be taken upon them. As we have seen, however, the chapter does prescribe the form of an execution against both property and person; and the meaning of section 20 of chapter 142 is, we think, that the persons and property of stockholders may be taken upon an execution issued against the corporation in the same manner as upon such an execution issued against them for their individual debts, for it is only upon such an execution that both persons and property can be taken. The statute readily bears this construction, and we only hesitate to adopt it because we do not easily perceive why the liability of a stockholder for the debts of the corporation should be more stringent than his liability for his individual debts. On the other hand, it is difficult to see how, under the construction proposed by the petitioner, the section can be carried into full effect ; for the statutes make no provision for the intervention of either court or justice, after the issuing of an execution, to authorize or direct its service upon the body. The section remains the same in the General Statutes as it was originally in the Revised Statutes ; and we ought to give it the effect which it originally had, so far as we can consistently with the alterations which have been made in the law regulating the form and service of writs and executions.

We do this when we adopt the construction contended for by the committing creditor. We therefore feel constrained to adopt that construction, and also to refuse the writ of *habeas corpus* unless the petitioner, on an examination of the amended commitment, can find some other reason for granting it.

*Petition refused.*

The above petition was heard before DURFEE, C. J., and MATTESON, J.

After the foregoing petition had been refused, the General Assembly of Rhode Island enacted cap. 600 of Public Laws, March 27, 1877. This act is given in full by Potter, J., in the opinion of the court which follows. Thereupon Penniman, March 28, 1877, filed another petition for a writ of *habeas corpus* and for a discharge. The discharge was opposed by judgment creditors of the American Steam & Gas Pipe Company, on the ground that cap. 600 was inconsistent with art. 1, § 12, of the Constitution of the state, and with art. 1, § 10, of the Constitution of the United States, which prohibit legislation " impairing the obligation of contracts." Penniman was released March 31, 1877, on filing satisfactory jail bonds, and his petition was heard April 4, 1877, by Durfee, C. J., and Burges, Potter, and Stiness, JJ.

*Edwin Aldrich & John D. Thurston*, for the petitioner.

*James Tillinghast & Harvey N. Shepard*, *contra*, for the creditor Perham.

*William B. Beach*, *contra*, for the creditor Tweedle.

*December* 3, 1877. POTTER, J. William Tweedle of Providence recovered judgment against the American Steam & Gas Pipe Company, and on the execution against said corporation, for want of the goods and chattels of the corporation, or of said Penniman to be found by the officer in his precinct, the officer committed said Penniman to jail, he being, as alleged in said return, a stockholder of said corporation and liable for said debt, said corporation not having made the returns required by statute. Penniman was also committed on a similar execution against said corporation in favor of Charles S. Perham of Boston.

He was committed by virtue of the provisions of the act concerning manufacturing corporations, Gen. Stat. R. I. cap. 142, § 20, which provides that in certain cases, *i. e.* when the corpo-

ration does not make the return required by § 11 of the same chapter, the persons and property of the stockholders may be taken for a debt of the corporation, " on any writ of attachment or execution issued against the company for such debt, in the same manner as on writs and executions issued against them for their individual debts." Section 21 provides that instead of this proceeding the creditor may have his remedy against the stockholders by a bill in equity.

After Penniman's commitment to jail, and while he was in jail, the General Assembly of Rhode Island, on March 27, 1877, passed the following act : —

" CHAPTER 600. AN ACT DEFINING AND LIMITING THE MODE OF ENFORCING THE LIABILITY OF STOCKHOLDERS FOR THE DEBTS OF CORPORATIONS.

" *It is enacted by the General Assembly as follows :*

" SECTION 1. No person shall hereafter be imprisoned, or be continued in prison, nor shall the property of any such person be attached, upon an execution issued upon a judgment obtained against a corporation of which such person is or was a stockholder.

" SEC. 2. All proceedings to enforce the liability of a stockholder for the debts of a corporation shall be either by suit in equity, conducted according to the practice and course of equity, or by an action of debt upon the judgment obtained against such corporation ; and in any such suit or action such stockholder may contest the validity of the claim upon which the judgment against such corporation was obtained, upon any ground upon which such corporation could have contested the same in the action in which such judgment was recovered.

" SEC. 3. All acts and parts of acts inconsistent herewith are hereby repealed.

" SEC. 4. This act shall take effect from and after the date of the passage thereof."

And Penniman now applies for his release under this act.

His application is opposed on the ground that the new act, so far as it affects contracts made before its passage, is void under

the provisions of the Constitutions of the United States and of this state as impairing the obligation of a contract.

If it merely concerned the Constitution of this state we should not need so extended an examination of authorities. But as it concerns the Constitution of the United States also, although the principles of decision should be the same, we are obliged to refer to the decisions of the United States courts.

Does the act in question impair the obligation of a contract? If so it is of course invalid.

The distinction between acts which undertake to repeal those portions of a charter which constitute a contract between the stockholders, or to vary the terms or construction of a contract, and acts which only affect the remedy provided by the laws in force when such contract was made, was very early taken. *Sturges* v. *Crowninshield*, 4 Wheat. 122, 152, 200; and it would seem from the unreported cases mentioned in Mr. Hunter's argument pp. 136, 137, that the distinction must have been made much earlier.

And in relation to acts which merely affected the remedy this serious difficulty arose. If a state legislature could abolish or take away the remedy, this would practically destroy the contract, although its moral obligation might still remain. And on the other hand, if the contracting party is entitled, as long as the contract continues, to the same remedy to enforce it which existed when the contract was made, we should have the strange spectacle for a country of equal and general laws, priding itself upon its freedom from special privileges, of different sets of laws in force at the same time for enforcing contracts of the same nature merely because such contracts had been made at different times.

Although generally contracts would soon expire, yet there are perpetual contracts, and there would be more of them, especially as regards real estate, if the law allowed the parties to retain all existing remedies. In the case of perpetual leases in fee we have one instance of what might be done. We should have parcels of land in the same neighborhood practically governed by very different laws.

In the case of the leases of the Rensselaer manor in New York a provision was incorporated in the contract which was for a perpetual lease in fee, giving the right of distress for rent and de-

tailing the mode of distraint. The legislature abolished distress for rent. The courts in New York held that the legislature might take away any particular remedy, provided they left an efficient remedy, and the cases, so far as we are informed, were never carried further. *Guild* v. *Rogers*, 8 Barb. S. C. 502; *Van Rensselaer* v. *Snyder*, 9 Barb. S. C. 302; and on appeal, 13 N. Y. 299; *Conkey* v. *Hart*, 14 N. Y. 22, 30.

So in the case of the old Rhode Island Bank charters. The old Providence Bank was chartered November, 1791, the Rhode Island Bank October, 1795, and these charters' contained a provision that when a note fell due and was unpaid for ten days after demand, the bank might summarily attach property and hold it to answer the suit, and the legislature had not reserved in the charter nor by general law the right to alter or repeal the terms of the charter. This right to attach was a special privilege, ordinary persons having no right to attach property unless the defendant was absent from the state. Similar provisions were inserted in charters passed during the following twenty years. This was familiarly known as bank process. In February, 1818, it was given to all banks by general law and without requiring any previous demand. In June, 1836, it was repealed as to all subsequent debts, and it was provided that banks should collect their debts by ordinary process and not otherwise, yet no question was ever raised as to the right of the legislature to take away this peculiar process. See also acts of February, 1820, October, 1820, October, 1821, and the laws of 1822, and the act of January, 1823; also the report of Mr. Durfee of Tiverton, who was afterwards chief justice, made to the House of Representatives, February 25, 1820, and published in the Providence Gazette. There were similar laws in Virginia, Maryland, and other states; see *Bank of Columbia* v. *Okely*, 4 Wheat. 235, and *Young* v. *The Bank of Alexandria*, 4 Cranch, 384.

And cases of covenants for quiet enjoyment and for warranty in deeds would also furnish instances.

In the Middle Ages we have indeed the example of countries where different nationalities were intermingled each retaining its own laws. But they generally were cases of conquest, where the conquering race, while introducing its own laws for itself, permitted the conquered to retain their old laws for the regulation of all their private affairs and relations.

It became necessary for the courts to draw some line of distinction defining the powers of the state legislatures in such cases. This has been done, and it is best to state it in the language used by the judges of the United States Supreme Court, as with them the decision of all such questions, so far as concerns the United States Constitution, ultimately rests.

Says Judge Story, after remarking that an abolition of all remedies would be impairing the obligation of the contract: "But every change and modification of the remedy does not involve such a consequence. No one will doubt that the legislature may vary the nature and extent of remedies so always that some substantive remedy be in fact left. . . . . And a state legislature may discharge a party from imprisonment in a civil case of contract without infringing the Constitution; for this is but a modification of the remedy and does not impair the obligation of the contract." Story on Const. § 1385.

"Nor would a state law discharging a party from imprisonment under a judgment upon a contract, though passed subsequently to the imprisonment, be an unconstitutional exercise of power; for it would leave the obligation of the contract undisturbed. The states still possess the rightful authority to abolish imprisonment for debt, and may apply it to present as well as to future imprisonment." Story on Const. § 1398.

The doctrine of the latter part of the foregoing section is founded upon the decision of the United States Supreme Court, in *Mason* v. *Haile*, 12 Wheat. 370, 378. "Can it be doubted but the legislatures of the states, so far as relates to their own process, have a right to abolish imprisonment for debt altogether, and that such law might extend to present as well as future imprisonment? We are not aware that such a power in the states has ever been questioned. And if such a general law would be valid under the Constitution of the United States, where is the prohibition to be found that denies to the State of Rhode Island the right of applying the same remedy to individual cases? This is a measure which must be regulated by the views of policy and expediency entertained by the state legislatures. Such laws act merely upon the remedy, and that in part only. They do not take away the entire remedy, but only so far as imprisonment forms a part of such remedy. The doctrine of this court in the

case of *Sturges* v. *Crowninshield*, 4 Wheat. 122, 200, applies with full force to the present case. ' Confinement of the debtor may be a punishment for not performing his contract, or may be allowed as a means of inducing him to perform it. But the state may refuse to inflict this punishment, or may withhold this means and leave the contract in full force. Imprisonment is no part of the contract, and simply to release the prisoner does not impair its obligation.' "

And it is a noticeable fact that the case of *Mason* v. *Haile*, 12 Wheat. 370, grew out of the practice, formerly prevalent in Rhode Island, of passing special acts of the legislature for each particular case, granting release from imprisonment or complying with the terms of the old Insolvent Act of 1756, which had long been repealed as a general law. Haile was committed on the execution issued on the judgment against him, and had given bond for the liberty of the yard, as it was called, *i. e.* to remain within the statutory limits of the jail yard.[1] He had taken the poor debtors' oath, and was still detained on the limits by his creditors paying his jail board. In this stage of the case the legislature granted his petition for a discharge, and he was discharged. Suit was brought on his jail bond, on the ground that the legislature could not discharge him. His discharge was lawful if the legislative act was constitutional. And it is evident that the fact that the act was a special one was fully before the minds of the court. See, also, *Beers et al.* v. *Haughton*, 9 Pet. 329, 359; *Gray, Sherwood & Co.* v. *Munroe et als.* 1 McLean, 528; Records of General Assembly R. I. February, 1816.

And Judge Cooley says (Constit. Limitations (3d ed.), 287: " It has accordingly been held, that laws changing remedies for the enforcement of legal contracts will be valid even though the new remedy be less convenient than the old, or less prompt and speedy."

The latter part of this paragraph is founded on the decision of the United States Supreme Court in *Bronson* v. *Kinzie et als.* 17 Pet. 28 ; 1 How. U. S. 311. Although it was not decisive of the case, yet it was necessarily considered, and has been over and over

---

[1] See Public Laws R. I., Digest of 1822, p. 419, for the definition of these limits at that time. They were enlarged in 1830, and are now the limits of the county.

again so laid down in the text books, and seems consistent with other decisions.

The counsel for the creditors has referred us to this case, *Bronson* v. *Kinzie et als.*, as showing a disposition on the part of the United States Supreme Court to retrace its steps.

The Legislature of Illinois had passed two acts, one giving a mortgagor whose land was sold under a decree in chancery a right to redeem; and another prohibiting a sale under such a decree unless for two thirds of an appraised value. The validity of these two acts was discussed by the court. Taney, C. J., delivered the opinion : " If the laws of the state had done nothing more than change the remedy upon contracts of this description, they would be liable to no constitutional objection. For, undoubtedly, a state may regulate at pleasure the modes of proceeding in its courts in relation to past contracts aswell as future. It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations." . . . . " And, although a new remedy may be deemed less convenient than the old one, and may, in some degree, render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But if that effect is produced it is immaterial whether it is done by acting on the remedy or directly on the contract itself." 1 How. U. S. 315, 316. And the court go on, p. 317, to explain their meaning, by saying that the obligation of the contract may be seriously impaired " by burdening the proceedings with new conditions and restrictions, so as to make the remedy hardly worth pursuing." The court held, p. 320, that the new law gave to the mortgagor an equitable estate in the land, which he did not have under the original contract of mortgage, and that the other act imposed conditions which would often render a sale impossible, and besides was confined to past contracts. These are the principles laid down by the court.

McLean, J., p. 322, dissented, on the ground that the question of constitutionality had not been argued, and its decision was not necessary in the case ; he held to the broader ground as expressed in the opinion of Marshall, C. J., in *Sturges* v.

*Crowninshield*, 4 Wheat. 122, 200, that the remedy was no part of the contract; and argued strongly that any other doctrine would leave every case at the mere discretion of the court. Every contract, he contended, p. 330, was entered into with a supposed knowledge that the law making power could control the remedy.

And the decision in this case was subsequently referred to and approved in *McCracken* v. *Hayward*, 2 How. U. S. 608, 613.

The case of *Hawthorne* v. *Calef*, 2 Wall. 10, is instructive. The Legislature of Maine had provided in a charter that if no property of the corporation could be found, the property of the stockholders should be liable, and the execution against the corporation might be levied on the property of a stockholder in the same manner as if the execution was against him personally, or the creditor might have an action of the case against him.

The plaintiff sued the corporation, and, getting nothing, sued the defendant. The Legislature of Maine, a few months after the debt was contracted, repealed the individual liability clause of the charter.

The Supreme Court of that state sustained the act, on the ground that, as the charter did not make the stockholder personally liable, but only his property, it could not be called a contract within the meaning of the Constitution of the United States.

The case came before the United States Supreme Court, in 1864, and the decision of the state court was reversed. Nelson, J., in delivering the opinion of the court, says, speaking of the charter remedy: " This remedy the repealing act has not merely modified to the prejudice of the creditor, but has altogether abolished, and thereby impaired the obligation of his contract with the company." 2 Wall. 23. The court holding, that the stockholders had virtually agreed to become security to the creditors for the debts of the corporation.

In *Von Hoffman* v. *City of Quincy*, 4 Wall. 535, 553, the court say : " The right to imprison for debt is not a part of the contract. It is regarded as penal rather than remedial. The states may abolish it whenever they think proper. *Beers et al.* v. *Haughton*, 9 Pet. 359 ; *Ogden* v. *Saunders*, 12 Wheat. 230 ; *Mason* v.

*Haile*, 12 Wheat. 373; *Sturges* v. *Crowninshield*, 4 Wheat. 200. They may also exempt from sale under execution the necessary implements of agriculture, the tools of a mechanic, and articles of necessity in household furniture." " It is competent for the states to change the form of the remedy or to modify it otherwise as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which under the form of modifying the remedy impair substantial rights. Every case must be determined upon its own circumstances. . . . . If these doctrines were *res integræ* the consistency and soundness of the reasoning which maintains a distinction between the contract and the remedy, or, to speak more accurately, between the remedy and the other parts of the contract, might, perhaps, well be doubted. 1 Kent Comm. 456; Sedgwick on Stat. & Constit. Law, 652; Washington, J., dissenting, in *Mason* v. *Haile*, 12 Wheat. 379. But they rest in this court upon a foundation of authority too firm to be shaken, and they are supported by such an array of judicial names that it is hard for the mind not to feel constrained to believe they are correct. The doctrine upon the subject established by the latest adjudications of this court renders the distinction one rather of form than substance."

This is stating it almost as strongly as Judge Marshall had previously stated it in *Sturges* v. *Crowninshield*, 4 Wheat. 122, 200. " Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation may direct."

The United States Supreme Court, in the *Planters' Bank* v. *Sharp et al.* 6 How. U. S. 301, 327, observed that " one of the tests that a contract has been impaired is that its value has by legislation been diminished," and this remark is quoted in *Von Hoffman* v. *City of Quincy*, 4 Wall. 535; and the court, p. 553, take occasion to explain and qualify it. " This," they say, " has reference to legislation which affects the contract directly, and not incidentally or only by consequence. The right to imprison the debtor is not a part of the contract. It is regarded as penal rather than remedial. The states may abolish it whenever they think proper."

We have quoted freely from the United States Supreme Court because it is by the rules they lay down for the construction of the United States Constitution and by the spirit of them that we must decide this case, and not by our own views of what the law ought to be.

Let us examine the present case in the light of those decisions.

It is very plain that the new act does not attempt to do any one of several things which have been heretofore held to invalidate such acts. It does not postpone payment of the debt nor impose any condition on it. It does not annul the judgment against the corporation or in any manner reopen it, or, as the respondents contend, grant a new trial so far as the corporation is concerned; nor does it authorize the corporation to make any new defence it could not have made before; or does it even authorize the stockholder to make any new defence; he can only make, and that for his own protection only, such defenceas the corporation could have made; it merely protects him against the fraud or negligence of its officers. The distinction in regard to allowing new defences is well laid down by Judge Cooley. "If the new defence would defeat a contract previously valid, or take away any right assured to the party by it," then it would be in conflict with the Constitution of the United States. "But if the new defence only presents legal objections in some new way, or is designed only to make available an existing equity, the provision for it should be regarded as affecting the remedy only," and therefore admissible.

The counsel for the creditors has referred us to Pomeroy on Constitutional Law, which states the doctrine in favor of the creditor as strongly as it can be stated consistently with the decisions. He states as elements necessary to the efficacy and perfection of the remedy: 1st. The right to bring an action as soon as is permitted by the ordinary procedure; 2d. The right to obtain a judgment as soon as possible according to the ordinary modes of proceeding; 3d. "The right to enforce this judgment as soon and as efficiently as is allowed by the same general methods of practice." State laws interfering with these impair the obligation of the contract. "But the modes of judicial procedure have nothing in them intrinsically connected with the

remedial right. . . . . They . . . . may be changed whenever new notions of policy become controlling, or an altered condition of society or of business requires another arrangement. Among these matters which belong to procedure are . . . . the forms of action and of pleading by which the claims and defences of parties shall be presented ; the periods of time given in which to respond ; . . . . the time within which judgment may be enforced, provided such period be fairly referable to that general convenience of courts and of suitors which lies at the basis of all established modes of practice, and be not a merely arbitrary delay which unnecessarily hinders the creditor. A change in these and such like matters does not affect the remedial right itself, and does not impair the obligation of even existing contracts." §§ 612, 613.

And in § 609 Pomeroy says the decisions of the United States Supreme Court have established and applied the rule, that materially altering or postponing the existing remedy, or imposing new conditions upon it, which substantially interfere with its present conditions, have the effect to impair the obligation of the contract.

It is difficult to see how the new act violates any of the conditions laid down in this treatise.

It does not in the least alter or diminish the liability either of the corporation or of the stockholder on the contract.

The counsel for the creditors have referred to *Hawthorne* v. *Calef*, 2 Wall. 10, as being like this case. We cannot perceive any similarity whatever. In that case the Legislature of Maine, after the debt was incurred, repealed the liability clause of the charter. And in the often cited case of *Green* v. *Biddle*, 8 Wheat. 1, all remedy was taken away. So also in *Planters' Bank* v. *Sharp et al.* 6 How. U. S. 301. So also in *Gunn* v. *Barry*, 15 Wall. 610, where the court say the remedy was not impaired but annihilated, and the lien acquired by judgment taken away.

What, then, does the new act of 1877 do ? It abolishes the imprisonment ; and if we can rely at all upon judicial language the United States Supreme Court have in many cases, and by various judges, decided that this may be done ; and that it may even be applied to existing cases ; and in the case of *Mason* v.

*Haile*, that it may be done by special act, after the debtor had, as in this case, been committed on execution.

Upon the constitutionality of state insolvent laws, so far as they undertake to release future acquired property from liability for past debts, there has been at times great conflict of opinion among the judges, and so too as to their effect upon contracts subsequently made, and as to the place of contract. But upon the point now before us, the right to liberate the body from imprisonment, there has never been, so far as we are aware, any difference of opinion. See also *Planters' Bank* v. *Sharp et al.* 6 How. U. S. 301, 328.

The new act further provides that the debtor's property shall not be attached on the execution against the corporation.

The former law contained a provision that the execution against the corporation, even if the corporation had a valid defence which either fraudulently or negligently it had not made, might be levied on the stockholders' property without any notice to him or hearing whatever. Whether this could be constitutionally done or not is not now the question. It is attempted to be justified on the ground that when a person becomes a stockholder he consents to it. See *Hawthorne* v. *Calef*, 2 Wall. 10, 22. The court observes that he virtually agrees to become security for the debts, and quotes Chancellor Jones in *Corning* v. *McCullough*, 1 N. Y. 47, 49, as holding that he becomes concurrently liable. But it would be considered a strange proceeding to give a creditor a right, on getting judgment against one man to levy his execution on the property of a surety or joint promisor, without notice to the latter or opportunity to dispute the claim.

In the *Bank of Columbia* v. *Okely*, 4 Wheat. 235, the bank had a right by its charter to attach the property of its debtors on original process against any person indebted to the bank on bills or notes expressly made negotiable at said bank.

On a motion to quash the execution as being against constitutional right, it was argued that the debtors by signing the note had consented to the jurisdiction and process. The court rejected the motion, mainly, as it would seem, on the ground that a trial by jury was secured to the debtor by the act. But they go on to say that they would ponder long before they would

sustain this action, if they could be persuaded that the act in question produced a total prostration of the trial by jury, or even involved the defendant in circumstances which rendered that right unavailing for his protection.

In this case the debtor had by his signature admitted the debt. And, furthermore, his right to trial by jury was saved to him.

Allowing that one person may give to another a power to confess judgment against him for a definite or ascertainable sum, it would not follow that he might waive permanently his right to a trial by jury and other constitutional privileges.

The question would somewhat resemble the one sometimes agitated of the right of a man to sell himself into perpetual slavery.

Some judges, *Conant* v. *Van Schaick*, 24 Barb. S. C. 87, and cases there cited, have compared the liability here imposed to that of partners. An ordinary charter gives all the advantages of partnership, with the additional advantages of an immunity from private liability. And they argue that the old law in this case operated merely to take away the immunity; and that the stockholder by becoming such has consented to it. But it is believed that the records of courts will be searched in vain for a case where, upon a judgment against partners, the law has allowed the execution to be levied on the separate property of one who had no notice of the suit. Fictions have generally been invented by the courts to subserve the purposes of justice. Not so here.

Although no question of the constitutionality of the old law is raised here, these considerations are important as showing the superior equity of the new law over the old one.

A person may authorize an agent to make a bargain, and be bound by the authority he has given. But he certainly ought not to be deprived of the right to a trial by jury upon the question whether any legal contract was ever made by his agent.

It is argued that the corporation was trusted on the ground of this liability; true, perhaps, but not on the ground of the particular mode in which that liability is to be enforced, and more especially if one equally available is provided.

The remedy by bill in equity, the most just of all because it would compel all to pay in proportion, might be tedious, but not

necessarily so; and if delay attends it, it can be no serious ground of objection to the new act, for the old act also provided the same remedy.

In place of the power to levy without notice or service of any kind upon private property, the new act substitutes an action of the case; and the sole privilege granted by the new act, which is not contained in the old one, is, that if the corporation had any valid defence to the action, the stockholder may set it up to the same extent the corporation might have done.

And while it repeals the provision by which his property could be levied upon on the execution against the corporation, without notice to him or opportunity for defence, it leaves his property entirely open to attachment, and his person to arrest, in the new action which it gives against him personally, and interposes no delay other than necessarily attends all litigation.

Under our laws the creditor gains no lien by his judgment; but if in the present case he claimed to have a lien by levy of execution on property, and the legislature had then undertaken to repeal the old remedy and divest the lien so claimed, the question would have been different from the one before us. See *Gunn* v. *Barry*, 15 Wall. 610, 622.

> *The petition must therefore be granted, and the discharge ordered.*

NOTE BY MR. JUSTICE POTTER. — The very able argument of Hon. William Hunter, in the case of *Sturges* v. *Crowninshield*, 4 Wheat. 122, 135, is well worth reading on this question. He gives a history of the English laws for imprisonment for debt, and also an account of several unreported cases involving this question decided on circuit by Ellsworth, C. J., Jay, C. J., and others, many of them in Rhode Island. He mentions a tradition ascribing the introduction of this phrase into the Constitution to Judge Wilson; but it seems now that it was introduced on motion of Rufus King, and was taken from the Ordinance concerning the Northwestern Territory. See Curtis's Hist. of the Constitution, vol. 2, 365; Elliot's Debates, vol. 5, 484; Madison Papers, Gilpin's ed. vol. 3, 1443, 1552. It seems strange that it was so slightly noticed in the Federalist. See Nos. 32 and 34. See also Judge Tucker's edition of Blackstone, vol. 1, part 1, appendix, p. 311.

Mr. Hunter is still recollected by the older members of the bar as one of the most learned and eloquent advocates that ever adorned the profession. He was for some time Senator in Congress, and United States Minister to Brazil.

For various definitions of obligation and contract, see Cooley's Const. Limit. 3d ed. p. 285 ; Reid's Essays on the Active Powers, Essay 5, ch. 6, p. 445.

STINESS, J., concurring.  I concur in the opinion of Mr. Justice Potter, though somewhat reluctantly.

Without here referring to all the decided cases of a character similar to this, it is sufficient to say that the Supreme Court of the United States has declared those acts to " impair the obligation of a contract," —

*a.* Which discharge a contract without performance ; *Sturges* v. *Crowninshield*, 4 Wheat. 122 ; *Hawthorne* v. *Calef*, 2 Wall. 10.

*b.* Which impose such new conditions upon the sale of a debtor's property as materially to hinder and possibly to prevent a creditor from selling it to satisfy his judgment. *Bronson* v. *Kinzie*, 1 How. U. S. 311 ; *McCracken* v. *Hayward*, 2 How. U. S. 608.

*c.* And which withdraw, by exemption, so much of the debtor's property from " the obligation of the contract" as practically to annihilate it. *Gunn* v. *Barry*, 15 Wall. 610.

It has declared those acts to be valid which affect only the remedy. *Mason* v. *Haile*, 12 Wheat. 370.

In *Bronson* v. *Kinzie*, Mr. Chief Justice Taney says: " And although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional."

Where a charter gave to a bank a summary process by execution against its debtors, the court says: " It is the remedy and not the right; and, as such, we have no doubt of its being subject to the will of Congress." *Bank of Columbia* v. *Okely*, 4 Wheat. 235, 245.

Acts which simply release a debtor from imprisonment have uniformly been upheld.

Now this act relates simply to the remedy, — *i. e.* to the form

and course of proceeding, — and does not discharge the debtor, nor withdraw any of his property from the obligation of the contract. It does not prevent the attachment of any portion of it to be held for this debt; nor burden it with new conditions; it is liable at once to be levied on to answer to the judgment against the corporation, and the contract of the corporator to be personally liable for the debt of the corporation is as binding on him as ever; *but*, the creditor must bring a new suit and obtain judgment against the individual before his property shall be applied to pay the debt of the corporation, and before he shall " be imprisoned, or be continued in prison."

This is a change in the remedy, and I cannot say that it deprives the creditor of all remedy, or so abridges his remedial rights as to impair the obligation of the contract itself, or leave him one " hardly worth pursuing." Hence I am constrained to hold, following the decisions of the Supreme Court of the United States upon this provision, — the language of our Constitution in this respect is identical with that of the federal Constitution, — that this act is not unconstitutional.

Indeed, as to future contracts, it seems more consonant with reason and justice that a corporator should have some personal notice before his person or property is taken for the debt of the corporation.

Nevertheless, it cannot be denied that this act is very detrimental to the interest of the creditor, whose claim accrued under the old law. To be compelled to submit to the postponement, trouble, and expense of a new suit, while it may not impair the obligation of the contract, as that phrase has been defined, most clearly impairs the value of that obligation; and it is easy to conceive that many corporations have received credit simply from the existing liability of the stockholders and the summary process to enforce it.

This act, therefore, comes very near to the limit of the Constitution, if it does not transcend it.

I must say that the reasoning seems to me to be the stronger which holds that an act " to lessen or take away from the extent and efficacy of the remedy to enforce the contract, legally existing when the contract was made, impairs its value and obligation." 1 Kent, 12th ed. § 456, note *a;* Sedgwick on Stat. & Constit. Law, 630.

But by respect for the high authority of the Supreme Court of the United States interpreting the federal Constitution, and by the principle "*Stare decisis, et quieta non movere,*" I am led to the conclusion stated.

DURFEE, C. J., dissenting. The petitioner, who has been brought before us on a writ of *habeas corpus,* seeks to be liberated from the Providence County jail, where he is imprisoned on an execution against the American Steam & Gas Pipe Company, a manufacturing corporation created by the General Assembly and established in the city of Providence. The petitioner is or was a member of the corporation, and was committed under chapter 128 of the Revised Statutes and chapter 142 of the General Statutes : the certificate required to exempt him from personal liability never having been filed in the city clerk's office as provided by those statutes. The legality of the commitment, as originally made, is not now questioned ; the petitioner claims release under an act recently passed, to wit, chapter 600 of the Public Laws. The first section of the act is as follows : —

"No person shall hereafter be imprisoned or be continued in prison, nor shall the property of any such person be attached, upon an execution issued upon a judgment obtained against a corporation of which such person is or was a stockholder."

The section completely abolishes the remedy at law given by previous statutes for the enforcement of a stockholder's liability. The committing creditor contends that the section should be construed as applying only prospectively, and not, retrospectively, to a case like the case at bar, where the remedy is in process of enforcement, and the stockholder has already been committed. The language of the section is in my opinion too plain to admit of such a construction. The section was I have no doubt designed to apply to a case like the case at bar, if not enacted directly in view of its applying to the case at bar.

The committing creditor contends that if the section is applicable in the case at bar, it is unconstitutional, because it impairs the obligation of the contract under which the petitioner was committed. This point cannot be properly considered without considering it in connection with the second section of chapter 600, which gives a new remedy in substitution for the remedy abolished by the first section. The second section is as follows : —

Providence County. Durfee, C. J., dissenting.

"All proceedings to enforce the liability of a stockholder for the debts of a corporation shall be either by suit in equity, conducted according to the practice and course of equity, or by an action of debt upon the judgment obtained against such corporation; and in any such suit or action such stockholder may contest the validity of the claim upon which the judgment against such corporation was obtained, upon any ground upon which such corporation could have contested the same in the action in which such judgment was recovered."

By the third section of chapter 600 all acts and parts of acts inconsistent therewith are repealed.

The new remedy given by the second section is not the remedy by suit in equity, for that existed under the previous statutes, but the remedy by "an action of debt upon the judgment obtained against the corporation." The petitioner contends that this remedy, or this together with the remedy by suit in equity, is a sufficient substitute for the remedy abolished by the first section, and that therefore the committing creditor cannot justly complain that the obligation of his contract with the corporation is impaired.

Previous to the enactment of chapter 600, the remedy at law was a service of the execution, issued against the corporation, upon the persons and property of the stockholders, in the same manner as if the execution were an execution against them for their individual debts. The remedy, once the judgment was recovered against the corporation, was perfect; for the execution, issuing thereon against the corporation, could be served upon the person or property of any stockholder within the state. Under the law, as altered by chapter 600, if chapter 600 is constitutional, an execution issuing against the corporation can be served only upon the corporate property. Upon such an execution the person or property of the stockholder can no longer be touched. If the creditor wishes to pursue the stockholder at law, he must bring an action of debt against him upon the judgment recovered against the corporation, and must fight the action through again to final judgment against the stockholder, who is authorized to contest his claim upon any ground upon which it would have been contested by the corporation. It must be confessed that the alteration of the law is very detrimental to the creditor. The

question is whether, considering the fact that the remedy in equity remains, the obligation of the contract must be held to have been impaired by so detrimental a change in the remedy given for its enforcement at law.

There are cases which maintain that any change in existing remedies is permissible so long as existing contracts are not left without the means of enforcement. If this view is correct, chapter 600 is clearly not unconstitutional. I think the view is erroneous. What is the obligation of a contract? Without pretending to answer the question in full, I reply that the obligation of a contract is that which obliges the parties to perform it, and that which obliges the parties to perform it is the law which may be resorted to in case of default, to compel the defaulting party either to perform it or to make compensation for not performing it. It follows that any change of the law which impairs the compulsive or remedial efficacy of the law in this respect, necessarily impairs the obligation of any contract which has been entered into under it. A contract is legally obligatory only because of the remedies given to enforce it. An oral guaranty, for instance, does not bind the guarantor, simply because no action can be maintained on it. And this is the doctrine of the Supreme Court of the United States, as declared in *Curran* v. *The State of Arkansas*, 15 How. U. S. 304. The court there said, p. 319: " The obligation of a contract, in the sense in which these words are used in the Constitution, is that duty of performing it which is recognized and enforced by the laws. And if the law is so changed that the means of legally enforcing this duty are materially impaired, the obligation of the contract no longer remains the same." The same court, in the earlier case of *McCracken* v. *Hayward*, 2 How. U. S. 608, 612, said : " The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made : these are necessarily referred to in all contracts, and form a part of them, as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either than that which the terms of the contract indicate, according to their settled legal meaning ; when it becomes consummated, the law defines the duty and the right, compels

one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law diminish the duty or impair the right, it necessarily bears on the obligation of the contract in favor of one party to the injury of the other. Hence any law which, in its operation, amounts to a denial or obstruction of the. rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution." See *Bronson* v. *Kinzie*, 1 How. U. S. 311; *Gantly's Lessee* v. *Ewing*, 3 How. U. S. 707, 717; Pomeroy's Const. Law, § 619 *et seq.* The same view has been expressed by several state courts. *Oliver* v. *McClure*, 28 Ark. 555, and cases there cited; *Rosier* v. *Hale et al.* 10 Iowa, 470. In *Scobey* v. *Gibson*, 17 Ind. 572, the court remarked: " Any legislation, professedly directed to the remedy, which deprives the party of one substantially as efficient as that existing at the making of the contract, does impair the obligation of the contract." And in *Townsend* v. *Townsend*, 1 Peck (Tenn.), 1, the language of the court was: " The law is the source of the obligation, and the extent of the obligation is defined by the law in use at the time the contract is made. If this law direct a specific execution, and a subsequent act declare that there shall not be a specific execution, the obligation of the contract is lessened and impaired." And the court added: " The legislature may alter remedies; but they must not, so far as regards antecedent contracts, be rendered less efficacious or more dilatory than those in being when the contract was made, if such alteration be the direct and special object of the legislature apparent in the act."

It is true the doctrine is not to be pressed to an extreme; for the law is reasonable as well as logical; and, accordingly, it has been held that an alteration of the law which only affects the forum, or form of procedure, but leaves the substance of the remedy unimpaired, or that merely changes a rule of evidence, or the police regulations of the state, though it may incidentally affect the rights of parties under existing contracts, is not necessarily unconstitutional on that account. Cooley's Const. Limit. 284 *et seq.* I am not prepared even to say that a law is void which abolishes a remedy, if it substitutes another substantially as efficient. But the change effected by chapter 600 cannot be

classed with these permissible changes. It abolishes a remedy that is convenient and summary, and substitutes for it a remedy which is far more dilatory, expensive, and uncertain. And this change appears to have been directly designed by the legislature. It is vain to argue that the creditor is not worsened by it. His contract is no longer as effectively obligatory. I cannot avoid the conclusion (the new remedy notwithstanding), that its obligation is impaired. The fact that the remedy in equity is still preserved does not prevent this, for the remedy at law was as simple as it was formidable, and for that reason, after judgment recovered against the corporation, was far more efficient than the remedy in equity. I therefore think chapter 600 is, so far as regards prior contracts, unconstitutional.

But because this is so, does it follow that the petitioner is not entitled to be released. Is it not possible that chapter 600 may be constitutional in so far as it prohibits imprisonment on an execution against the corporation, though, as respects existing contracts, it is unconstitutional in its further prohibitions ? The committing creditor contends that the act is a connected whole, and, therefore, cannot be sustained at all unless it can be wholly sustained. Much can be said in favor of this view; but supposing the different clauses of the act are not so interdependent, and that the provision against imprisonment may be separated from the rest, the question then is, whether the provision in itself is constitutional or not. In considering this question it will be well first to see exactly what is the effect of the provision. It utterly takes away the right of imprisonment on an execution against the corporation. It does not even reserve the right to the creditor upon proof of fraud. If the right has already been exercised, and a stockholder has been imprisoned before the enactment of chapter 600, he is to be liberated at once without making any assignment, and without undergoing any judicial examination. The petitioner is so imprisoned. If chapter 600 is constitutional he is liberated by the simple fiat of the legislature, though he may have abundant means and may have them so invested or so concealed that they cannot be reached by any process running simply against his property. If he had no property when he was imprisoned, and had been guilty of no fraud, there was nothing to prevent his then taking the poor

debtors' oath. The question recurs, whether a provision which has or may have such an effect is constitutional?

I think it is settled that a state has the power, even as regards existing contracts, to abolish imprisonment for debt, in the manner in which it is usually abolished; that is to say, excepting in cases of fraud on the part of the debtor, committed either in contracting the debt or in concealing or withholding his property. I think it is also settled that a state has the power to au-. thorize the liberation of a debtor lawfully imprisoned for debt, upon judicial proof of his insolvency, and on his making an assignment for his creditors. *Sturges* v. *Crowningshield,* 4 Wheat. 122, 200; *Mason* v. *Haile,* 12 Wheat. 370; *Beers et al.* v. *Haughton,* 9 Pet. 329, 359; *Gray, Sherwood & Co.* v. *Munroe et al.* 1 McLean, 528; *Woodfin* v. *Hooper,* 4 Humph. 13; *Newton* v. *Tibbats,* 7 Ark. 150; *Bronson* v. *Newberry,* 2 Dougl. Mich. 38; *Donnelly* v. *Corbett,* 7 N. Y. 500. The law is so settled on perfectly valid reasons. If a debtor has no property wherewith to pay his debt, imprisoning him cannot oblige him to pay it, and, therefore, it does not impair the obligation of his contract to exempt or release him from imprisonment. It is true, imprisoning him may induce his relatives or friends to pay the debt in order to ransom him from confinement; but certainly the state is not required to perpetuate the remedy on that account, for it is not to be supposed that anything so barbaric was within its original design.

But this reasoning does not apply where the debtor has property, especially if the property is concealed, intangible, or out of the jurisdiction. It is a mockery in such a case to say the creditor is not prejudiced because the debt and the debtor's property remain, for it is only through the debtor that the property can be reached. It may be, indeed, that the law, pledging the body of the stockholder, was the very ground upon which the credit was given; for, at a time like this, when coupon bonds are so plentiful, nothing would be easier than for a wealthy man, if there were no imprisonment for debt, to defy his creditors while retaining his property. It is true, in the case at bar, there is no proof that the petitioner has property, except the fact that he has not taken the poor debtors' oath; but there is likewise no proof of the contrary; and the law allows him to go at large

without first proving his insolvency, and does not allow the creditor to detain him, even upon proof that he is abundantly solvent. Can it be that such a law is constitutional? It has been decided by the Supreme Court of the United States that the contract with the corporation is virtually a contract with the stockholders. *Hawthorne* v. *Calef*, 2 Wall. 10. The obligation of the contract, considered as a contract binding the stockholders, is defined by the liabilities annexed to it by statute, and the statute expressly subjects the stockholders, on execution against the corporation, to liability in their persons as well as in their property. How, then, can it be held that the obligation of the contract is not impaired by an act which unconditionally exempts or releases the person of the stockholder from this liability? I think that upon principle the exemption or release cannot be sustained, and that the act which authorizes it must be held to be unconstitutional.

I am aware that this conclusion is not supported by the authority of any decision which is exactly in point; but that, on the contrary, there are many cases, some of them in the Supreme Court of the United States, in which it has been broadly declared that a state has the power to abolish the remedy by imprisonment, even without reservation in respect of antecedent contracts. I think, however, it will be found, on examination, that this language was used, in most of the cases, when a more guarded expression would have answered as well, and where, for anything that appears, the distinctions which we have indicated were not present to the mind of the court. See *Bronson* v. *Newberry*, 2 Dougl. (Mich.) 38, and the extract from Judge Swift's commentaries there cited. I think, too, if we look through the language to the grounds of decision, — the *ratio decidendi*, as it has been termed, — the conclusion which I have reached is inevitable.

I must therefore withhold my concurrence with the opinions of a majority of the court.

*Order entered December 15, 1877.*

*October Term* A. D. 1877. *This cause came on to be heard at this term upon said petition, and the writ issued thereon, and the return made thereto, and it appeared that said petitioner claimed to be discharged from his commitments on executions set out in*

*the return to said writ by virtue and force of the first section of the act of the General Assembly passed at the January Session A. D. 1877, to wit, March 27, 1877, entitled "An act defining and limiting the mode of enforcing the liability of stockholders for the debts of corporations, and being chapter 600 of the General Statutes or Public Laws of this state, and that such discharge was opposed by the committing creditors respectively on the ground that said section of said act of the General Assembly is repugnant to and in violation of section ten of article one of the Constitution of the United States of America as impairing the obligation of their respective judgments upon which such commitments were had, and of their respective contracts on which such judgments were founded, and therefore unconstitutional and void. And counsel for the respective parties were fully heard thereon. And now, after consideration thereof, it is adjudged that said section of said chapter 600 is valid and constitutional, and that said petitioner, by force and virtue of said section one of said chapter 600, is entitled to be discharged from further custody under said commitments. And it is ordered that he be forthwith -discharged therefrom accordingly.*

Thereupon the committing creditors, December 26, 1877, sued out a writ of error to the Supreme Court of the United States.